1  Gordon W. Renneisen (SBN 129794)
   CORNERSTONE LAW GROUP
2  351 California Street, Suite 600
   San Francisco, CA 94104
3  Telephone:  (415) 625-5025
   Facsimile:   (415) 655-8236
4  grenneisen@cornerlaw.com

5  Attorneys for Plaintiffs and all others
   similarly situated
6

7            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

8               **FOR THE COUNTY OF SAN FRANCISCO**

9                 **UNLIMITED CIVIL JURISDICTION**

10  MARTHA COOPER and DANIEL             **CASE NO. 3:20-cv-08569-JSC**
    COOPER on behalf of themselves and
11  all others similarly situated,          **FIRST AMENDED COMPLAINT**

12               Plaintiffs               **Claims for**

13        vs.                            1.  **Breach of Contract**
                                         2.  **Breach of the Covenant of Good Faith and**
14  GENERALI U.S. BRANCH (a.k.a              **Fair Dealing**
    Generali Assicurazioni Generali S.p.A.  3.  **Public Injunctive Relief re Foreseeability**
15  (U.S. Branch)) and CUSTOMIZED        4.  **Public Injunctive Relief re Other Issues**
    SERVICES ADMINISTRATORS, INC.        5.  **Violations of Business and Professions**
16  (doing business as Generali Global       **Code § 17200**
    Assistance & Insurance Services),
17
                 Defendants.
18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

### NATURE OF THE ACTION

1.      This is a consumer class action brought by Plaintiffs Martha Cooper and Daniel Cooper on behalf of a state-wide class of Californians.

2.      The Coopers purchased travel insurance from Defendants Customized Services Administrators, Inc. (doing business as Generali Global Assistance & Insurance Services)  and Generali U.S. Branch (licensed in California as Generali Assicurazioni Generali S.p.A. (U.S. Branch)).

3.      The Coopers purchased their policy in January of 2020, to protect themselves against the loses they would incur if their June 15, 2020 trip from their home in San Francisco, California to Istanbul, Turkey was cancelled.

4.      After the Coopers purchased airplane tickets for their trip and purchased travel insurance from Defendants, California and the United States suffered widespread outbreaks of coronavirus disease 2019 ("COVID-19" or the "coronavirus").

5.      As a direct response to the COVID-19 epidemic and in order to prevent the spread of the disease, the State of California, the City and County of San Francisco, and other local governments in California issued shelter-in-place orders, which barred nonessential travel. These orders were first issued in March of 2020 and remain in place as of the filing of this Complaint.

6.      The Coopers and all members of the class they seek to represent were subject to orders barring nonessential travel; proceeding with the scheduled trips for which they purchased travel insurance from Defendants would have violated these shelter-in-place orders.

7.      Defendants have wrongfully refused to pay trip cancellation benefits due under the policies they sold to the Coopers and similarly situated Californians.  Through their wrongful conduct, Defendants breached their contracts, breached the covenant of good faith and fair dealing implied in those contracts, and violated California's Unfair Competition Law.

8.      The Coopers bring this action on behalf of themselves and on behalf of a similarly situated class of California residents.  In addition, acting as private attorneys general, the Coopers seek public injunctive relief.

CLASS ACTION COMPLAINT

1

**JURISDICTION AND VENUE**

2       9.      Jurisdiction and venue in the San Francisco Superior Court is proper.  The

3  amount of damages sought is within the jurisdiction of the Superior Court. Each of the causes

4  of action alleged in the complaint arises under California law and Plaintiffs seek certification of

5  a class of California residents. Plaintiffs reside in San Francisco, California and entered into

6  their contract with Defendants in San Francisco. Defendants are conducting business in San

7  Francisco and a substantial part of the events or omissions giving rise to the claims at issue

8  occurred in San Francisco.

9       **THE PARTIES**

10      10.      Plaintiff Martha Cooper is, and at all relevant time was, a citizen of the State of

11  California residing in San Francisco, California.

12      11.      Plaintiff Daniel Cooper is, and at all relevant time was, a citizen of the State of

13  California residing in San Francisco, California. Daniel Cooper is married to Martha Cooper

14  and they are together referred to herein as "Plaintiffs" or the "Coopers."

15      12.      Defendant Customized Services Administrators, Inc. (doing business as Generali

16  Global Assistance & Insurance Services) is a California Corporation with its principal place of

17  business in San Diego, California – where its Chief Information Officer for North America and

18  Chief Insurance Officer are based.  As Customized Services Administrators, Inc. does business

19  as Generali Global Assistance & Insurance Services, it is referred to herein as  "Generali

20  Global."  Generali Global is in the business of selling and administering travel insurance

21  policies. At all relevant times, Generali Global was selling travel insurance policies to

22  California residents; and was authorized to and was doing business in California.

23              a.      Generali Global was formerly known as "CSA Travel Services." CSA

24  Travel Services rebranded as Generali Global in 2017.  However, for some purposes,  Generali

25  Global still does business as "CSA Travel Services" or "CSA Travel Protection and Insurance

26  Services" (collectively "CSA"); or otherwise uses the CSA name.  The terms "CSA" and

27  "Generali Global" are used interchangeably herein.

28

CLASS ACTION COMPLAINT

b.    Information on CSA is set forth on its websites, https://www.generalitravelinsurance.com/csa-travel-protection and https://www.csatravelprotection.com/about-us.  On its websites CSA describes itself as "a leading provider of travel insurance and other assistance services for consumers and business partners around the world"; and identifies itself as "founded in 1991 and based in San Diego, California."

13.    Defendant Generali U.S. Branch does business in California as Generali Assicurazioni Generali S.p.A. (U.S. Branch) and is referred to herein is "Generali U.S." Generali U.S. underwrites travel insurance policies sold by Generali Global and administers those policies through CSA. Generali U.S. maintains its principal place of business in New York, New York and asserts that it is domiciled in the state of New York.  At all relevant times, Generali Global was authorized to and was doing business in California.

14.    Plaintiffs are informed and believe, and on that basis allege, that at all times relevant hereto each of the Defendants was an employee, agent, or representative of each of the other Defendants and was, with respect to all matters referred to herein, acting within the course and scope of such employment, agency, or representation.  Plaintiffs are informed and believe, and on that basis allege, that each of the Defendants has ratified, authorized, and/or approved the acts and/or omissions of each other Defendant alleged herein

**THE COOPER'S PURCHASE OF INSURANCE AND THE POLICY'S TERMS**

15.    The Coopers wanted to take a vacation with their daughter.  On January 26, 2020, they purchased three airplane tickets for a family trip to Europe.  To start their trip, the Coopers planned to fly from San Francisco to Istanbul, with a connection in Helsinki.

16.    The San Francisco-to-Istanbul trip was booked as single itinerary.  A true and correct copy of that itinerary is attached hereto as Exhibit A.  The itinerary confirms that the Coopers were scheduled to depart San Francisco on June 15, 2020 and to arrive in Istanbul on June 16, 2020.  It also confirms that the Coopers purchased "CSA Travel Protection" for their trip.

CLASS ACTION COMPLAINT

17.    The Coopers purchased their airplane tickets online through JustFly and used a credit card to pay for the tickets.

18.    The JustFly website included an electronic solicitation from Defendants, offering the Coopers the option of buying travel insurance for their trip to Istanbul.  The Coopers accepted this offer and purchased a travel insurance policy from Defendants when they booked their trip.  As with the airplane tickets, the Coopers purchased their travel insurance online.  From their home in San Francisco, the Coopers electronically entered into their contract with Defendants on January 26, 2020.

19.    Attached hereto as Exhibit B is a true and correct copy of a January 26, 2020, Policy Confirmation Letter from CSA to Plaintiff Martha Cooper, with the Coopers' street address redacted.  It confirms the Coopers' purchase of a travel protection insurance plan from Defendants, Policy No. 20026W5835, for a premium of $123.34.   The Coopers used a credit card to pay the premium.

20.    The Policy Confirmation Letter in part states, "This plan is Underwritten by Generali U.S. Branch and Administered by CSA Travel Protection."

21.    In addition, the Policy Confirmation Letter includes a "Schedule of Benefits." The Schedule of Benefits confirms that the insurance policy Defendants sold to the Coopers included trip cancellation insurance, with trip cancellation benefits in the amount of $1,644.57.

22.    On January 26, 2020, together with the Policy Confirmation Letter, Defendants sent the Coopers a copy of their travel insurance policy, Master Policy No. TMP100010 (the "Policy") – including a notation that the Policy was "Underwritten by Generali U.S. Branch," and a term identifying  "CSA Travel Protection" as the "Program Administrator."   A true and correct copy of the Policy is attached hereto as Exhibit C.

23.    The Policy includes a "Trip Cancellation Benefit," which in part provides as follows.

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy.

24.     The Policy's Trip Cancellation Benefit lists "Being hijacked or Quarantined" as one of the relevant "Covered Events." The Policy defines "Quarantine" as meaning "the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

25.     The Policy includes various exclusions. Defendants contend that two of these exclusions are relevant to claims made based on the cancellation of trips as a result of shelter-in-place orders issued in response to the COVID-19 epidemic.

26.     Exclusion 1.q states, "We will not pay for any loss under this Policy, caused by, or resulting from … travel restrictions imposed for a certain area by governmental authority."

27.     Exclusion 1.t states, "We will not pay for any loss under this Policy, caused by, or resulting from … any issue or event that could have been reasonably foreseen or expected when you purchased the coverage."

**GOVERNMENTAL RESPONSES TO COVID-19**

28.     COVID-19 is caused by severe acute respiratory syndrome coronavirus 2. Common symptoms include fatigue, fever, coughing, and respiratory complications that sometimes may be severe.   COVID-19 is currently believed to be highly contagious – with the disease being easily transmitted between people in close contact via droplets expelled into the air by a person sneezing, coughing, singing, or talking.

29.     The coronavirus can be fatal.  Based on the data it has collected, updated as of August 6, 2020, Johns Hopkins University reports that the mortality rate for confirmed cases of COVID-19 in the United States is 3.3%.  *See* https://coronavirus.jhu.edu/data/mortality.

30.     The first cases of COVID-19 were detected in Wuhan China and were reported on December 31, 2019.

31.     On January 30, 2020, the World Health Organization ("WHO") noted that cases of COVID 19 had been detected outside of China and declared "a public health emergency of international concern over the global outbreak of novel coronavirus." https://www.who.int/dg/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov).  The WHO's declaration in part stated. "First,

CLASS ACTION COMPLAINT

1    there is no reason for measures that unnecessarily interfere with international travel and trade.

2    WHO doesn't recommend limiting trade and movement." *Id*

3          32.    On January 30, 2020, the U. S. Centers for Disease Control and Prevention

4    ("CDC") issued a press release reporting the "the first instance of person-to-person spread" of

5    COVID-19 within the United States. https://www.cdc.gov/media/releases/2020/p0130-

6    coronavirus-spread.html. The press release included CDC's recommendation that "travelers

7    avoid all nonessential travel to China"; but also stated, "CDC deems the immediate risk from

8    this virus to the general public to be low." *Id*.

9          33.    The following day, January 31, 2020, President Trump issued a proclamation

10    banning travel from China to the United States. This ban did not apply to United States citizens

11    or to multiple other categories of people.  The ban did not purport to bar U.S. citizens or the

12    residents of any state from traveling anywhere.

13          34.    A month later, on February 29, 2020, President Trump issued a second

14    proclamation, which banned travel from Iran to the United States. This ban did not apply to

15    United States citizens or to multiple other categories of people.  It did not purport to bar U.S.

16    citizens or the residents of any state from traveling anywhere.

17          35.    The President's Coronavirus Task Force held a press conference addressing the

18    proclamation regarding travel from Iran on February 29, 2020; and the White House released a

19    transcript of the press conference.  https://www.whitehouse.gov/briefings-statements/remarks-

20    president-trump-vice-president-pence-members-coronavirus-task-force-press-conference-2/.

21          36.    Regarding the safety of travel to and from the West Coast of the United States,

22    the February 29, 2020 transcript reports the following exchange between a reporter, U.S.

23    Department of Health and Human Services Secretary Alex Azar, and CDC Director Dr.

24    Robert Redfield.

25          Q    Is traveling to Washington State okay?

26          SECRETARY AZAR:  Yes it is.  Yes.

27          Q    It is?

28          SECRETARY AZAR:  Yes.  Yes.  Dr. Redfield, because you mentioned that, I
          want to make sure we answer that question.

Q    And California.  Can we travel to California — to and from California and Washington State?

DR. REDFIELD:  I just want to echo again that the risk is low — the risk is low.   I encourage Americans to go about their life.  That includes travel to California, Oregon, and the state of Washington.

37.    On March 11, 2020, the WHO declared COVID to be a pandemic.  That same day, President Trump issued another proclamation – this one banning travel from much of Europe to the United States. Like President Trump's prior proclamations, this one did not apply to U.S. citizens and did not purport to impose travel restrictions on the residents of any state.

38.    On March 16, 2020, an order directing residents to shelter at home was issued by the public health officers of Alameda, Contra Costa, Marin, San Francisco, San Mateo, and Santa Clara counties (collectively the "Bay Area Counties"), and the City of Berkeley.  The substantive terms of this shelter-in-place order were the same for all Bay Area Counties and the City of Berkeley (which is in Alameda County).

39.    A true and correct copy of the March 16, 2020 shelter-in-place order issued by the City and County of San Francisco (the "San Francisco Shelter-In-Place Order") is attached hereto as Exhibit  D. The Order in part states as follows.

> The virus that causes Coronavirus 2019 Disease ("COVID-19") is easily transmitted, especially in group settings, and it is essential that the spread of the virus be slowed to protect the ability of public and private health care providers to handle the influx of new patients and safeguard public health and safety. Because of the risk of the rapid spread of the virus, and the need to protect all members of the community and the Bay Area region, especially including our members most vulnerable to the virus and also health care providers, this Order requires all individuals anywhere in San Francisco to shelter in place—that is, stay at home—except for certain essential activities and work to provide essential business and government services or perform essential public infrastructure construction, including housing.

40.    Section 5 of the San Francisco Shelter-In-Place Order provides, "All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel and Essential Activities as defined below in Section 10, is prohibited."

41.    Section 12 states, "Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and the Chief of Police in the County ensure compliance with and enforce this Order.  The violation of

7

CLASS ACTION COMPLAINT

any provision of this Order constitutes an imminent threat and creates an immediate menace to public health." The Order's introductory paragraph similarly warns, "Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both."

42. On March 19, 2020, Gavin Newsom Governor of the State of California issued Executive Order N-33-2 (the "California Shelter-In-Place Order"), which "in order to protect public health … order[ed] all individuals living in the state of California to stay home or at their place of residence except as needed to maintain … critical infrastructure" and other operations deemed critical. A true and correct copy of the California Shelter-In-Place Order is attached hereto as Exhibit E.

43. Section 4 of the Order states, "This Order shall be enforceable pursuant to California law, including but not limited to, Government Code section 8665." Government Code § 8665 in turn provides, "Any person who … refuses or willfully neglects to obey any lawful order or regulation promulgated or issued as provided in this chapter, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punishable by a fine of not to exceed one thousand dollars ($1,000) or by imprisonment for not to exceed six months or by both… ."

44. Since being issued, the California Shelter-In-Place Order and the San Francisco Shelter-In-Place Order have been amended. However, both remain in force. In addition to the Bay Area Counties other local governments have also issued shelter-in-place orders. All California residents were still subject to travel restrictions as of the filing of this action.

## DEFENDANTS' DENIAL OF THE COOPERS' CLAIM

45. The Cooper's vacation travel was not "essential" or "critical," and thus was not exempt from the travel restrictions imposed by the California Shelter-In-Place Order and the San Francisco Shelter-In-Place Order.

46. On May 17, 2020, the Coopers submitted a claim to Defendants. A true and correct copy of the claim, with birthdates partially redacted, is attached hereto as Exhibit F.

47. The Coopers have not been able to obtain a complete refund from the airlines of the payments they made to book their trip to Istanbul.

CLASS ACTION COMPLAINT

48.    As confirmed by Exhibit A, the Coopers paid a total of $1,915.42 for the San Francisco-to-Istanbul trip, including $123.34 for the CSA travel insurance. The cost of the trip, excluding the insurance payment to Defendants, was $1,792.08. The Coopers were able to obtain a refund of $1,644.57. They thus incurred a loss of $147.51.

49.    Defendants nevertheless denied the Coopers' claim. Attached hereto as Exhibit G is a true and correct copy of June 15, 2020 Claims Correspondence from CSA to Plaintiff Martha Cooper, with the Coopers' street address redacted. It provides in pertinent part as follows.

> Your policy only provides benefits for specific, listed events including Quarantine, and defines Quarantine as, " . . . the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

> Please also note stay-at-home orders are not considered Quarantine as these stay-at-home orders are not enforced isolation.

> Additionally, the policy states "We will not pay for any loss under this Policy, caused by, or resulting from: . . . travel restrictions imposed for a certain area by governmental authority."

> As the reason for your cancellation does not meet the requirements of a listed, Covered Event and is subject to exclusion, no benefits are payable for your claim.

50.    The Coopers dispute both Defendants' denial of their claim and Defendants' interpretation of the terms of the Policy.

## CLASS ALLEGATIONS

51.    Plaintiffs bring this action as a class action pursuant to California Code of Civil Procedure § 382.

52.    Plaintiffs seek to represent a state-wide class (the "California Class") consisting of persons who purchased travel insurance from Defendants during the period beginning four years prior to the filing of this action and continuing until March 11, 2020 (the "Class Period"), and as further defined below in subparagraphs (a) and (b).

a.    The California Class consists of all persons who (i) during the Class Period and while residing in California, purchased travel insurance including coverage for trip cancellations from Defendants; (ii) incurred out of pocket costs in connection with the trips for

CLASS ACTION COMPLAINT

which they purchased insurance; (iii) were subject to the California Shelter-In-Place Order and/or a similar shelter-in-place order issued by any local California government at the time they were scheduled to take their trips; and (iv) have not received payment of trip cancellation benefits from Defendants.

b.      Specifically excluded from the California Class are the officers, directors, employees, and agents of Defendants; any attorney representing Defendants or Plaintiffs in this action; and any judge or other judicial officer presiding over this action, as well as the staff and immediate family of any such judge or judicial officer.

53.    Plaintiffs reserve the right to, as appropriate, seek certification of one or more subclasses – including, without limitation, the following.

a.      The "Early Purchaser Subclass," defined to mean all members of the California Class who purchased travel insurance from Defendants before January 29, 2020.

b.      The "February Subclass," defined to mean all members of the California Class who purchased travel insurance from Defendants before February 29, 2020.

c.      The "Bay Area Subclass," defined to mean all members of the California Class residing in the Bay Area Counties.

54.    The Early Purchaser Subclass, February Subclass, and Bay Area Subclass (collectively the "Subclasses") are all fully encompassed by the California Class.  The term "Class" thus is used to refer to the California Class and to the Subclasses included within it. The term "Class Member" means any person included in the Class.

55.    Plaintiffs Martha and Daniel Cooper are members of the California Class and all of the Subclasses.

56.    Plaintiffs and all other Class Members are similarly situated.

57.    Plaintiffs and all other Class Members purchased travel insurance from Defendants. Plaintiffs are informed and believe and based thereon allege and that all Class Members obtained travel insurance coverage under the Master Policy No. TMP100010 form or under an alternate form providing substantively identical trip cancelation insurance.

CLASS ACTION COMPLAINT

58.     Plaintiffs and all other Class Members were subject to the California Shelter-In-Place Order and/or similar shelter-in-place orders issued by local governments in California. Such orders included travel restrictions that barred Class Members from proceeding with the scheduled trips for which they had purchased travel insurance.

59.     Plaintiffs and all other Class members were harmed and suffered injury in fact. They paid insurance premiums to Defendants but did not receive the trip cancellation benefits for which they had contracted, and which were due to them under the terms of the travel insurance policies they purchased from Defendants.

60.     Defendants were contractually obligated to pay trip cancellation benefits to Class Members who were subject to COVID-19 shelter-in-place orders at the time they were scheduled to depart on the trips for which they had purchased travel insurance.  Under the terms of the travel insurance policies the Class Members purchased from Defendants, the California Shelter-In-Place Order and similar shelter-in-place orders issued by local governments in California constituted "unforeseeable Covered Events" that prevented Class Members from taking their trips.  But Defendants have a common practice of deeming all COVID-19 shelter-in-place orders to be insufficient to establish "Quarantine" triggering coverage under Defendants' travel insurance policies.

61.     Defendants also have a common practice of deeming all COVID-19 shelter-in-place orders to constitute "travel restrictions imposed for a certain area by governmental authority" so that claims for trip cancellation benefits based on such orders are excluded from coverage under the Defendants' travel insurance policies.

62.     Plaintiffs are informed and believe and based thereon allege and that Defendants have a further common practice of  asserting that, the issuance of shelter-in-place orders imposing coronavirus-related travel restrictions was an "event that could have been reasonably foreseen or expected" so that claims for trip cancellation benefits based on such orders are excluded from coverage under the Defendants' travel insurance policies.

63.     With respect to each Class Member, Defendants have refused to make trip cancelation benefit payments due under their policies.

CLASS ACTION COMPLAINT

64.     Certification of the Class is proper pursuant to the provisions of California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and because, as more fully stated below, the proposed Class is ascertainable; the Class is so numerous that joinder of all members is impracticable; the claims of the representative Plaintiffs are typical of the claims of the class; the representative Plaintiffs will fairly and adequately protect the interests of the Class; there are questions of law or fact common to the Class; questions of law or fact common to all members of the Class predominate over any questions affecting only individual members of the Class; and a class action is superior to other available methods for fairly and efficiently adjudicating the claims at issue.

65.     *Numerosity and Ascertainability*.  The members of the Class are so numerous that joinder of all Class Members is impracticable.  While the exact number of Class Members is unknown to Plaintiffs at this time, the number and identities of members of the Class can easily be determined from the Defendants' records.  Moreover, the definition of the Class set forth in this complaint is sufficient to allow Class Members to identify themselves as having a right to recover based on the description of the Class. Plaintiffs are informed and believe and based thereon allege that there are many hundreds of persons in the Class.

66.     *Typicality*.  The proposed representatives of the Class are members of the Class and their claims are typical of the claims of the Class Members.  The proposed representatives of the Class and unnamed members of the class have all been similarly affected by, among other things, Defendants' breach of contract and Defendants' failure to pay trip cancelation benefits due for trips cancelled because of coronavirus-related, shelter-in-place orders.  All Class Members paid premiums to Defendants for trip-cancellation insurance but did not receive the benefits for which they paid.

67.     *Adequacy*.  Plaintiffs are ready and able fairly and adequately to protect the interests of the Class Members.  Plaintiffs have retained counsel who have the skill and experience to effectively prosecute this action on behalf of the class.

68.     *Common Questions*.  Common questions of law and fact exist as to all Class Members. These common questions include, but are not limited to, the following.

CLASS ACTION COMPLAINT

a.      Whether – notwithstanding the provisions of the California Shelter-In-Place Order making violations punishable by a fine, imprisonment, or both under Government Code § 8665 – Defendants properly may assert that such stay-at-home orders are not "enforced isolation" sufficient to qualify as "Quarantine" or to trigger trip cancellation coverage under Defendants' travel insurance policies.

b.      Whether – notwithstanding the fact that the California Shelter-In-Place Order restricts travel generally, without regard to any traveler's scheduled destination – Defendants properly may assert that the terms of such stay-at-home orders constitute "travel restrictions imposed for a certain area by governmental authority" or otherwise justify Defendants' refusal to pay trip-cancellation benefits under Defendants' travel insurance policies.

c.      Whether – notwithstanding the fact that, at least as recently as February 29, 2020, CDC Director Redfield was encouraging Americans to travel to and from California – Defendants properly may assert that Class Members purchasing travel insurance prior to March 11, 2020, should have reasonably foreseen the entry of shelter-in-place orders by state and local governments in California.

d.      Whether Defendants' common conduct with respect to the Class Members constituted a breach of Defendants' contracts with the Class Members

e.      Whether Defendants' common conduct with respect to the Class Members constituted a breach of Defendants' covenant of good faith and fair dealing.

f.      Whether Defendants are obligated to pay the trip cancellation benefits specified in their travel insurance policies to the Class Members.

69.      *Predominance*.  These common questions predominate over any questions that affect only individual members of the Class.  This is so, in part, because (a) all members of the Class are subject to the same California Shelter-In-Place Order; and (b) Defendants entered into common, standardized, form contracts with all members of the Class.

70.      *Superiority*.  A class action is superior to other available means for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impractical; and class action treatment will permit a large number of similarly situated persons

CLASS ACTION COMPLAINT

1   to prosecute their common claims in a single forum simultaneously, efficiently, and without the

2   unnecessary duplication of effort and expense that numerous individual actions would

3   engender. Furthermore, as the damages suffered by each individual Class Member are

4   relatively small, the expense of individual litigation would make it difficult or impossible for

5   individual members of the Class to redress the wrongs done to them.  Such individual litigation

6   also would impose unnecessary burdens on the court system; and would present the potential

7   for inconsistent or contradictory judgments.  There will be no difficulty in the management of

8   this matter as a class action.

9                          **FIRST CAUSE OF ACTION**

10                  **(For breach of contract; brought by Plaintiffs individually**

11                        **and on behalf of the Class)**

12          71.     Plaintiffs reallege and incorporate all of the preceding paragraphs as though

13   fully set forth in this cause of action.

14          72.     With respect to each Class Member, Defendants entered into a contract for

15   travel insurance, which by its terms obligated Defendants to pay trip cancellation benefits to

16   any policyholder prevented from taking an insured trip due to any "unforeseeable Covered

17   Events" including "Quarantine."

18          73.     Each such contract was supported by the premium paid to Defendants by the

19   Class Member and/or by other consideration.

20          74.     All Class Members have performed any duties imposed on them by their

21   insurance contracts with Defendants or have been excused from performing such duties.

22          75.     At the time that each Class Member was scheduled to depart for an insured trip,

23   the Class Member was subject to the California Shelter-In-Place Order and/or local shelter in-

24   place-orders.  The California Shelter-In-Place Order and similar, local orders were enforceable;

25   and violators could be punished by fine, imprisonment, or both.  Such orders imposed

26   "enforced isolation" or "Quarantine" under the terms of Defendants' travel insurance policies

27   and prevented those travelers subject to them from departing on their scheduled trips.

28

CLASS ACTION COMPLAINT

76.     With respect to each Class Member, Defendants have committed a breach of contract by failing to pay the Class Member the trip cancellation benefits due under the Class Member's travel insurance policy.

77.     Each Class Member has been denied a payment to which he or she was entitled and has been damaged by Defendants' breach of contact.

78.     Plaintiffs on behalf of themselves and all Class Members seek recovery for Defendants' breach of contract and pray for relief, including an award of damages and attorneys' fees, as set forth below.

## SECOND CAUSE OF ACTION

**(For breach of the implied covenant of good faith and fair dealing;**

**brought by Plaintiffs individually and on behalf of the Class)**

79.     Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

80.     Under California law, "There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co*. (1958) 50 Cal.2d 654, 658. "This principle is applicable to policies of insurance." *Id.*

81.     Defendants owe, and at all material times referenced herein have owed, a duty of good faith and fair dealing to the Class Members, all of whom are its insureds.

82.     Defendants have breached their duty of good faith and fair dealing to the Class Members by, among other things, unreasonably and improperly refusing to pay trip cancellation benefits due to the Class Members under the terms of the travel insurance policies they purchased from Defendants.

83.     Defendants' bad faith conduct also includes, without limitation, unreasonably asserting that shelter-in-place orders enforceable by fine or imprisonment did not establish "enforced isolation" or "Quarantine" under the terms of Defendants' travel insurance policies; and unreasonably asserting that – at times prior to March 11, 2020 – the issuance of shelter-in-place orders imposing coronavirus-related travel restrictions was reasonably foreseeable.

CLASS ACTION COMPLAINT

84.    In taking such actions, Defendants acted with malice, fraud, and/or oppression, as defined in California Civil Code § 3294.

85.    As a proximate result of Defendants' actions, Plaintiffs and the Class have suffered and will continue to suffer substantial prejudice and damages.  As a further proximate result of Defendants' actions, Plaintiffs and the Class have incurred, and will continue to incur, attorneys' fees and related costs in order to obtain the insurance contract benefits Defendants have improperly withheld.

86.    As a result of Defendants' conduct, as alleged herein, Plaintiffs are entitled to recover their damages, including attorneys' fees and expenses, and to claim and recover punitive damages from Defendants' in amounts to sufficient to punish and make an example of Defendants in order to deter such conduct in the future.

87.    Plaintiffs on behalf of themselves and all Class Members pray for relief as set forth below.

### THIRD CAUSE OF ACTION

**(For public injunctive relief and declaratory relief re foreseeability; brought by Plaintiffs as private attorneys general under Business and Professions Code § 17203)**

88.    Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

89.    The conduct of Defendants as alleged in this complaint violates California's prohibitions against unfair competition, which are set forth in Business and Professions Code § 17200, *et seq.* (the "Unfair Competition Law" or the "UCL").  The Unfair Competition Law prohibits business practices that are unlawful, unfair, or fraudulent.

90.    Pursuant to Business and Professions Code § 17204, suit may be brought for violations of the UCL by any "person who has suffered injury in fact and has lost money or property as a result of the unfair competition."

91.    "Public injunctive relief remains a remedy available to private plaintiffs under the UCL." *McGill v. Citibank*, N.A. (2017) 2 Cal. 5th 945, 961. And a claim for public injunctive relief need not be prosecuted as a class action. *Id*. at 960.

CLASS ACTION COMPLAINT

92.    As alleged above, Plaintiffs the have suffered injury in fact and have lost money or property as a result of Defendants' business practices.  In accordance with Business and Professions Code § 17204 and *McGill*, Plaintiffs assert this claim for public injunctive relief. They assert this claim as private attorneys general acting on behalf of the public and not as representatives of a class.

93.    Because the conduct of Defendants as alleged in this complaint violates the covenant of good faith and fair dealing, Defendants' conduct constitutes an unlawful business practice and also violates the UCL.

94.    Defendant's conduct as alleged in this complaint additionally constitutes an unfair business practice and violates the UCL because, among other reasons, (a) Defendants' conduct is oppressive and substantially injurious to consumers; (b) the harm to consumers is not outweighed by any countervailing benefits or justifications; and (c) the harm to consumers is not something consumers could have avoided.

95.    An actual controversy exists regarding Defendants' contention that, prior to March 11, 2020, the issuance of shelter-in-place orders imposing coronavirus-related travel restrictions constituted an "event that could have been reasonably foreseen or expected" so that claims for trip cancellation benefits based on such orders are excluded from coverage under the Defendants' travel insurance policies.

96.    A judicial declaration is necessary and appropriate to resolve this controversy. Further, Defendants will continue to wrongfully to deny claims for trip cancellation benefits based the on the contention that the entry of shelter-in-place orders was foreseeable unless enjoined from doing so.

97.    Plaintiffs thus are entitled to declaratory and injunctive relief – and to an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 – and pray for relief as set forth below.

**FOURTH CAUSE OF ACTION**

**(For public injunctive relief and declaratory relief re other issues; brought by Plaintiffs as private attorneys general under Business and Professions Code § 17203)**

CLASS ACTION COMPLAINT

98.     Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

99.      Plaintiffs assert this claim for public injunctive relief as private attorneys general acting on behalf of the public and not as representatives of a class.

100.     For the reasons alleged above, Defendants' business practices are unlawful and unfair, and violate the UCL.

101.     An actual controversy exists regarding Defendants' contentions that (a) persons subject to the California Shelter-In-Place Order and/or similar, local orders are not subject to "Quarantine" as that term is defined in Defendants' travel insurance policies; and (b) the California Shelter-In-Place Order and/or similar, local orders set forth "travel restrictions imposed for a certain area by governmental authority" so that claims for trip cancellation benefits based on such orders are excluded from coverage under the Defendants' travel insurance policies.

102.     A judicial declaration is necessary and appropriate to resolve this controversy. Further, unless enjoined from doing so, Defendants will continue to wrongfully to deny claims for trip cancellation benefits based on unreasonable constructions of the term "Quarantine" and the phrase "travel restrictions imposed for a certain area by governmental authority" used in Defendants' travel insurance policies.

103.     Plaintiffs thus are entitled to declaratory and injunctive relief – and to an award of attorneys' fees pursuant to Code of Civil Procedure § 1021.5 – and pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### (For violations of Business and Professions Code § 17200;

### brought by Plaintiffs individually and on behalf of the Class)

104.     Plaintiffs reallege and incorporate all of the preceding paragraphs as though fully set forth in this cause of action.

105.     To the extent that Plaintiffs and the Class cannot obtain complete relief based on the claims asserted in the First through Fourth Causes of Action, Plaintiff assert this Fifth

CLASS ACTION COMPLAINT

1    Cause of Action as an additional or alternative ground for relief. Plaintiffs assert this Fifth

2    Cause of Action on behalf of themselves and on behalf of the Class.

3    106.    For the reasons alleged above, Defendants' business practices are unlawful and

4    unfair, and violate the UCL.

5    107.    Defendants, through their unlawful and unfair business practices alleged herein,

6    have received and retained moneys that rightfully belong to Plaintiffs and the other similarly

7    situated class members. As a further result of these unfair business practices, Defendants have

8    been unjustly enriched and have achieved an unfair competitive advantage over their legitimate

9    business competitors at the expense of Plaintiffs and other similarly situated class members,

10   and the public at large.

11   108.    Business and Professions Code § 17203 authorizes the Court to enjoin unlawful,

12   unfair, and fraudulent business practices and to restore to an aggrieved person any money or

13   property acquired by means of such practices. Defendants will continue to engage in the

14   unlawful and unfair business practices alleged herein unless enjoined from doing so. Plaintiffs

15   thus seek declaratory and injunctive relief against Defendants regarding these practices.

16   109.    On behalf of themselves and the Class, Plaintiffs also seek restitution of all

17   sums Defendants took based on the above-described unlawful and unfair business practices. If

18   Class Members subject to shelter-in-place orders that prevented them from proceeding with the

19   trips for which they purchased insurance are not receiving the trip cancellation benefits

20   specified in their policies, the Class Members are entitled to restitution of, at a minimum, all

21   premiums paid to Defendants for those policies.

22   110.    To restore to the Class Members their "interest any money or property, real or

23   personal, which may have been acquired by means of … unfair competition," as required by

24   Business and Professions Code § 17203, restitution must be in the form of cash payments.

25   111.    Defendants also are liable for attorneys' fees under Code of Civil Procedure

26   § 1021.5.

27   112.    Plaintiffs on behalf of themselves and all Class Members pray for relief as set

28   forth below.

CLASS ACTION COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows.

On the First Cause of Action:

1.    For an order determining that this action may be maintained as a class action, certifying the California Class and/or such subclasses as the Court finds appropriate, appointing Plaintiffs Martha and Daniel Cooper as representatives of any certified class or subclass, and appointing Plaintiffs' counsel as counsel for any certified class or subclass;

2.    For damages according to proof, together with prejudgment and post-judgment interest as allowed by law; and

3.    For attorneys' fees pursuant to California Code of Civil Procedure §1021.5, or as otherwise requested by Plaintiffs and/or their counsel and allowed by law.

On the Second Cause of Action:

1.    For an order determining that this action may be maintained as a class action, certifying the California Class and/or such subclasses as the Court finds appropriate, appointing Plaintiffs Martha and Daniel Cooper as representatives of any certified class or subclass, and appointing Plaintiffs' counsel as counsel for any certified class or subclass;

2.    For damages according to proof, together with prejudgment and post-judgment interest as allowed by law;

3.    For punitive damages according to proof; and

4.    For attorneys' fees incurred in obtaining policy benefits and other attorneys' fees as allowed by law.

On the Third and Fourth Causes of Action:

1.    For public injunctive relief and declaratory relief; and

2.    For attorneys' fees pursuant to California Code of Civil Procedure §1021.5, or as otherwise requested by Plaintiffs and/or their counsel and allowed by law.

On the Fifth Cause of Action:

1.    For an order determining that this action may be maintained as a class action, certifying the California Class and/or such subclasses as the Court finds appropriate, appointing

Plaintiffs Martha and Daniel Cooper as representatives of any certified class or subclass, and appointing Plaintiffs' counsel as counsel for any certified class or subclass;

     2.    For restitution according to proof, together with prejudgment and post-judgment interest as allowed by law;

     3.    For injunctive and declaratory relief; and

     4.    For attorneys' fees pursuant to California Code of Civil Procedure §1021.5, or as otherwise requested by Plaintiffs and/or their counsel and allowed by law

    On All Causes of Action:

     1.    For litigation expenses and costs of suit; and

     2.    For all other relief which the Court shall deem just and equitable.

Dated:  January 29, 2021

                       /s/ Gordon W. Renneisen
                       Gordon W. Renneisen
                       CORNERSTONE LAW GROUP

                       Attorneys for Plaintiffs and all others similarly situated

## JURY DEMAND

    Plaintiffs demand trial by jury.

Dated:  January 29, 2021

                       /s/ Gordon W. Renneisen
                       Gordon W. Renneisen
                       CORNERSTONE LAW GROUP

                       Attorneys for Plaintiffs and all others similarly situated

CLASS ACTION COMPLAINT

EXHIBIT A

From: **Justfly.com** <[noreply@justfly.com](mailto:noreply@justfly.com)>
Date: Sun, Jan 26, 2020 at 11:06 PM
Subject: Your trip confirmation and receipt
To: Martha <[marthacooperdesign@gmail.com](mailto:marthacooperdesign@gmail.com)>



## Pack your bags. We'll take care of the rest!

You're all set! To view or print your boarding pass, go to your airline's website and enter your confirmation number (below). You can check-in for your flight 24 hours ahead of departure.

**JustFly Booking Number: 178-023-472**
**Finnair Confirmation Number: JK5QUR**

### With JustFly, you're in control of your booking!

JustFly is the only place where you can fully manage your booking online and at your convenience. Our Self Serve portal is designed to put you in control.

**Manage my Booking**

### YOUR ITINERARY

**Departure**



| San Francisco, CA (SFO) to Istanbul, Turkey (IST) | 1 Stop |
|---|---|

**Finnair**
Flight 12
*Terminal I*

| 7:10pm | Mon. Jun 15 | San Francisco, CA (SFO) |
| 3:50pm | Tue. Jun 16 | Helsinki (HEL) |

3h 10m Layover in Helsinki

**Turkish Airlines**
Flight 1764
*Terminal 2*

| 7:00pm | Tue. Jun 16 | Helsinki (HEL) |
| 10:25pm | Tue. Jun 16 | Istanbul (IST) |

| Total Trip Time: **20h 25m** | Baggage Information |

## IMPORTANT FLIGHT INFORMATION

Tickets are refundable with a penalty fee. Tickets are non-transferable and name changes are not allowed.

Fare Rules and Restrictions :

- 💲 Pay a fee to change itinerary.
- 💲 Pay a fee for cancellation.

Visit Finnair for additional information about bags and restrictions.
Visit and review our cancellation policies and fees for additional information.

## PRICE SUMMARY

3 Adult

| | |
|---|---|
| Base Fare | $513.00 |
| Taxes & Agency Fees | $51.14 |
| **Total Price (per person)** | **$564.14** |
| Paid Seats | $99.66 |
| CSA Travel Protection | $123.34 |
| **Grand Total:** | **$1,915.42** |

Please note: Your credit card may be billed in multiple charges totaling the final price. All prices are in USD.

## BAGGAGE INFORMATION

| SFO-IST Finnair | Carry on: | ✓ Included for free |
|---|---|---|
| | 1st checked bag: | ✓ Included for free |
| | 2nd checked bag: | View Policy |
| | Additional information: | View Policy |

## TRAVELERS

| Name | E-ticket |
|---|---|
| **Martha Page Cooper** | Finnair : 105-7441358089 |
| **Daniel Gordon Cooper** | Finnair : 105-7441358090 |
| **Dinah Royster Cooper** | Finnair : 105-7441358091 |



**Need a place to stay?**

Sit back and relax. We'll give you a list of the best hotels in Istanbul , no matter your budget! Big comfort. Better prices. You'll feel right at home.

**Find a hotel**



## Get great deals on car rentals

Convenience is key, especially in a new destination. Rent a great car and explore on your own terms, all without breaking the bank.

**Rent a car**

## YOUR TRAVEL INSURANCE POLICY



YOUR TRAVEL INSURANCE POLICY

## AIRLINE INFORMATION

 **Finnair**

Check-in    Baggage Policy    Contact

## REQUESTED SEATS

**Martha Cooper**

| SFO to HEL | HEL to IST |
|------------|------------|
| 32D | any |

**Daniel Cooper**

| SFO to HEL | HEL to IST |
|------------|------------|
| 32E | any |

**Dinah Cooper**

| SFO to HEL | HEL to IST |
|------------|------------|
| 32G | any |

## ADDITIONAL INFORMATION

**FARE POLICIES, RULES AND RESTRICTIONS**

Please read the complete rules for changes, cancellations and refunds (refer to Fare Rules and our Terms & Conditions). Cancellation and routing and date changes are subject to airline rules and our fees, should these changes be allowed by the airline. Name changes are not permitted. Taxes and fees are included in the total ticket cost. Prices may not include baggage fees or other fees charges directly by the airline.

**BAGGAGE RULES AND FEES**

Additional baggage fees may apply. For more details, click here: Baggage and Carry-On Fees. Since the baggage fees may change, we recommend that you contact the airline you are traveling on for the latest information regarding airline specific baggage rules, requirement and fees.

**SEATS**

If you have requested a seat to be assigned, we will send your request to the airline. Airlines may or may not be able to confirm your request. At times, airlines may not be able to assign specific seats or seats sitting together. Occasionally, seats can be assigned only at the check-in counter at the airport.

About Us • Privacy Policy • Terms & Conditions



EXHIBIT B

**From:** info@info.csatravelprotection.com
**Subject: CSA Travel Protection Policy #20026W5835 for Martha Cooper**
**Date:** January 26, 2020 at 8:07:22 PM PST
**To:** marthacooperdesign@gmail.com
**Reply-To:** info@csatravelprotection.com



PO Box 939057
San Diego, CA 92193
Fax: (800) 336-6409
info@csatravelprotection.com

**Policy Confirmation Letter**                                    G-AIRI02 GAIRI020519D

**Jan 26, 2020**

Insured:          **MARTHA COOPER**
Address:          ▇▇▇▇▇▇▇▇▇
                  **SAN FRANCISCO, CA  94103**


Policy Number:        **20026W5835**
Travel Protection Plan:**$123.34**

Dear Martha Cooper:

Thank you for choosing CSA Travel Protection for your travel insurance needs. As you prepare for your trip, you can be sure we are working hard to give you the peace of mind you deserve.

During your trip, emergency assistance is available 24 hours a day by contacting our designated service provider within the USA at (866) 922-0278 or internationally at (202) 974-6480 (collect calls accepted).**Terms and conditions apply. Please review your attached Description of Coverage/Policy carefully and if you have any questions about your plan please contact our Customer Service Department at (800) 451-4190.**

Your 10-day free look period expires on Feb 05, 2020. If you decide to cancel this plan during your free look period and you have not left for your covered trip or filed a claim, simply contact JustFly at (800) 717-5015 to request a full refund of the plan cost. On the following pages you will find a schedule of benefits. Again, thank you for choosing CSA Travel Protection to protect you before, during and after your trip.

In the event that you need to file a claim, please visit our eClaims portal at http://csaclaims.com/justfly

Sincerely,

CSA Travel Protection

This plan is Underwritten by Generali U.S. Branch and Administered by CSA Travel Protection

## SCHEDULE OF BENEFITS

| Details: | |
|---|---|
| Insured(s): | Martha Cooper, Daniel Cooper, Dinah Cooper |
| Policy Number: | 20026W5835 |
| Product Code: | G-AIRI02 |
| Enrollment Date: | Jan 26, 2020 |
| Trip Departure Date: | Jun 15, 2020 |
| Trip Return Date: | Jun 16, 2020 |
| Trip Cancellation Effective Date: | Jan 27, 2020 |
| Trip Cancellation Expiration Date: | Jun 15, 2020 |
| All other Coverages & Services Effective Date: | Jun 15, 2020 |
| All other Coverages & Services Expiration Date: | Jun 16, 2020 |
| Beneficiary: | |

| Services Provided: |
|---|
| 24-Hour Emergency Assistance Service |
| Concierge Services |

| Insurance Coverages Provided | Maximum Limit Per Person | Maximum Limit Per Plan |
|---|---|---|
| Trip Cancellation | $1,644.57 | $1,644.57 |
| Trip Interruption | $2,466.86 | $2,466.86 |
| Travel Delay ($100 maximum per day, per person) | $500.00 | $1,500.00 |
| Baggage Coverage | $750.00 | $2,250.00 |
| Baggage Delay Coverage | $200.00 | $600.00 |
| Medical and Dental Coverage | $50,000.00 | $100,000.00 |
| Emergency Assistance and Transportation | $25,000.00 | $50,000.00 |
| Accidental Death and Dismemberment - Air Flight Accident | $50,000.00 | $100,000.00 |



Plans are available to residents of the United States. Benefits and services are described on a general basis. Certain terms and conditions may apply. For questions or complete information on policy benefits, limits and exclusions, please contact CSA by phone or at http://www.csatravelprotection.com/certpolicy.do for a sample Description of Coverage or Insurance Policy for this plan. These plans are administered by CSA Travel Protection and Insurance Services. Services are provided through CSA's designated providers. Travel insurance is Underwritten by: Generali U.S. Branch, New York, New York; NAIC #11231 (all states except as otherwise noted) under Policy/Certificate Form series T001. California is Underwritten by Generali Assicurazioni Generali S.P.A. (U.S. Branch), Colorado is Underwritten by Assicurazioni Generali – U.S. Branch, Oregon is Under-written by Generali U.S. Branch DBA The General Insurance Company of Trieste & Venice, and Virginia is Underwritten by The General Insurance Company of Trieste and Venice – U.S. Branch.

20026W5835

EXHIBIT C



# DESCRIPTION OF COVERAGE

### G-AIRI02

UNDERWRITTEN BY GENERALI US BRANCH,

A Stock Company

Master Policy Number:TMP100010

This Description of Coverage does not amend, extend or alter the coverage afforded by the insurance policy.

This Description of Coverage may describe more travel insurance benefits than purchased by you. As insurance benefits can vary from program to program, please refer to the Schedule of Benefits. It provides you with specific information about the program you have purchased.

Notice to residents of AK, SD, OH, LA, CO, MN, WA, WY, IN, NY, GA, KS, OR, TN: This document is for informational purposes only. To obtain your state specific insurance policy please call (800) 554-9839 or visit http://www.csatravelprotection.com/certpolicy.do.

---

**FOR COVERAGE INQUIRIES OR CUSTOMER SERVICE CALL:**
**(800) 554-9839**

**PARA ASISTENCIA EN ESPANOL, FAVOR DE LLAMAR AL:**
**(800) 318-0179**

**FOR EMERGENCY ASSISTANCE 24H A DAY DURING YOUR TRIP, CALL:**

**IN THE U.S.**
**(866) 922-0278**

**COLLECT WORLDWIDE**
**(202) 974-6480**

---

The coverage applies to the Trip arrangements booked through the company from which you purchased the coverage.

economic or trade sanctions, or other laws or regulations, prohibit CSA Travel Protection from providing insurance, and related services, including, but not limited to, the payment of any claims. Any expenses incurred or claims made involving travel, or travel related services, that are in violation of such sanctions, laws or regulations will not be covered under this plan. Any coverage provided under this plan in violation of any US, UN or EU economic or trade sanctions, or other laws or regulations, shall be null and void. To learn more please visit the US Treasury's website at www.treasury.gov/resource-center/sanctions.

This plan does not apply to the extent any US, UN or EU

# DESCRIPTION OF 24-HOUR EMERGENCY ASSISTANCE SERVICES
## (PROVIDED BY CSA'S DESIGNATED PROVIDER)

**Available Services**

Various 24-Hour Emergency Assistance Services are provided along with the CSA Travel Protection® plans. A description of all 24-Hour Emergency Assistance Services are contained in this document. The 24-Hour Emergency Assistance Services are only available to persons whose primary residence is in the United States. This plan is administered by CSA Travel Protection and Insurance Services.

**How to Call the 24-Hour Emergency Hotline**

If you need emergency help for an available service, you can call toll-free 24 hours a day to (866) 922-0278 from within the United States, or call collect to (202) 974-6480 from around the world.

When calling, you should have available your Policy/ Reference number and Plan Code, your location, a local telephone number, and details of the situation. After your coverage has been verified, the assistance provider will assist you. If you cannot call collect from your location, dial direct and give the assistance provider your telephone number and location and they will call you back.

To call collect from a foreign country you may first need to reach a live operator on the line. In some cases, that operator may not understand how to process collect calls to the United States. To be prepared, please visit www.consumer.att.com/global/english/away/directservice.html for information on how to reach an English-speaking operator. If you were unable to reach CSA collect and paid for your call, we will ask you for a number to call you back so you will pay no further charges.

In the event of a life-threatening emergency, please first call the local emergency authorities to receive immediate assistance and then contact the assistance provider.

There may be times when circumstances beyond the assistance provider's control hinder their endeavors to provide help services; however, they will make all reasonable efforts to provide services and help resolve your problem.

The assistance provider cannot be held responsible for failure to provide, or for delay in providing services when such failure or delay is caused by conditions beyond its control, including but not limited to flight conditions, labor disturbance and strike, rebellion, riot, civil commotion, war or uprising, nuclear accidents, natural disasters, acts of God or where rendering service is prohibited by local law or regulations.

The assistance provider's staff will do their best to refer you to the appropriate providers. However, the assistance provider and CSA cannot be held responsible for the quality or results of any services provided by these independent practitioners.

### Availability of Services

You are eligible for informational and concierge services at any time after you purchase this plan.

The Emergency Assistance Services become available when you actually start your trip.

Emergency Assistance, Concierge and Informational Services end the earliest of: midnight on the day the program expires; when you reach your return destination; or when you complete your trip.

### Informational Services

The assistance provider offers a wide range of informational services before you leave home and during your trip, including: Visa, Passport, Inoculation and Immunization Requirements, Cultural Information, Temperature, Weather Conditions, Embassy and Consulate Referrals, Foreign Exchange Rates, and Travel Advisories.

## EMERGENCY ASSISTANCE SERVICES

### Medical Referral

If an emergency occurs during a trip that requires you to visit a doctor, you should call the Emergency Hotline to obtain the names of local qualified doctors who speak your language. If additional medical services are required, the assistance provider is prepared to consult with the attending physician and provide such assistance, as they believe to be in your best interest.

### Traveling Companion Assistance

If a Traveling Companion loses previously-made travel arrangements due to your medical emergency, the assistance provider will arrange for your Traveling Companion's return home.

### Emergency Cash Transfer

If your cash or traveler's checks are lost or stolen, or unanticipated emergency expenses are incurred, the assistance provider will help arrange for an emergency cash transfer in currency, traveler's checks, or other forms as deemed acceptable by the assistance provider. The assistance provider will advance up to $500 after satisfactory guarantee of reimbursement from you.

### Legal Referral

The assistance provider will locate attorneys available during regular working hours. Assistance will also be provided to advance bail bond, where permitted by law. You are responsible for contracted legal fees.

### Locating Lost or Stolen Items

The assistance provider will assist in locating and replacing lost or stolen luggage, documents and personal possessions.

### Replacement of Medication and Eyeglasses

The assistance provider will arrange to fill a prescription that has been lost, stolen or requires a refill, subject to local law, whenever possible. The assistance provider will also arrange for shipment of replacement eyeglasses. Costs for shipping of medication or eyeglasses, or a prescription refill, etc. are your responsibility. The refill may require a visit to a local physician. You should be prepared to furnish the assistance provider with a copy of your original prescription and/or the name and phone number of your regular attending physician.

### Embassy and Consular Services

The assistance provider will provide referrals to travelers needing the assistance of U.S. embassies and consulates.

### Worldwide Medical Information

The assistance provider can provide necessary inoculation and vaccination information, and detailed general health and medical descriptions of destinations around the world.

### Interpretation/Translation

The assistance provider will assist with telephone interpretation in all major languages or will refer you to an interpretation or translation service for written documents.

### Emergency Message Relay

Emergency messages can be relayed to and from friends, relatives, personal physicians and employers.

### Pet Return

The assistance provider will arrange for the return of your pet to your home if your pet is traveling with you and you are unable to take care of your pet due to a medical emergency.

### Vehicle Return

The assistance provider will make arrangements to have a designated person or provider return your vehicle to your home (or your rental vehicle to the closest rental agency) if you experience a medical emergency or mechanical problems, which prevent you from driving the vehicle.

## CONCIERGE SERVICES

**City profiles:** provide travelers access to information on over 10,000 destinations worldwide, including a complete report on local entertainment, social customs, and health advisories.

**Epicurean needs:** arranges the delivery of specialized foods and beverages to your home or office, including gourmet meats and fine wine.

**Event ticketing:** provides tickets to virtually any sporting, theater or concert event worldwide.

**Flowers and gift baskets:** include the purchase and shipment of flowers and gift baskets to friends, family members, and business associates.

**Golf outings and tee times:** provide referrals and tee times at golf courses around the world.

**Hotel accommodations:** offers research and recommendations on hotels worldwide and book reservations if requested by you.

**Meet-and-greet services:** include the pick-ups of friends; family members or business associates at airports or other common carrier destinations by limousine personnel.

**Personalized retail shopping assistance:** includes purchasing selected retail items at your request.

**Pre-trip assistance:** provides information on travel destinations, city profiles, weather, special events, ATM locations, currency exchange rates, immunization and passport requirements, and related services.

**Procurement of hard-to-find items:** ensures our associates will use every means possible to obtain an obscure or exotic item at your request.

**Restaurant reviews and reservations:** provides you with information on restaurants worldwide and the ability to book reservations from anywhere, anytime.

**Rental car reservations:** provide worldwide reservations through most major rental car agencies.

**Airline reservations:** provide full-service air travel accommodations to destinations worldwide.

**Pet Services Locator:** helps travelers find pet-related services such as veterinarians and pet sitters.

# INSURANCE COVERAGE

## SCHEDULE OF BENEFITS

| Coverage | Maximum Limit Per Person | Maximum Limit Per Plan |
|---|---|---|
| Trip Cancellation | 100% of Trip Cost Insured | |
| Trip Interruption | 150% of Trip Cost Insured | |
| Travel Delay ($100 Per Person Daily Limit Applies) | $500 | $5,000 |
| Baggage Coverage | $750 | $7,500 |
| Baggage Delay | $200 | $2,000 |
| Accidental Death and Dismemberment - Air Flight Accident | $50,000 | $100,000 |
| Medical and Dental | $50,000 | $100,000 |
| Emergency Assistance and Transportation | $25,000 | $50,000 |

## 10-DAY RIGHT TO EXAMINE YOUR DESCRIPTION OF COVERAGE

If you are not satisfied for any reason, you may cancel coverage under the policy within 10 days after receipt. Your premium payment will be refunded, provided that there has been no incurred covered expense and you have not left on your Trip. Return the Description of Coverage to us at the Program Administrators office or our authorized agent. When so returned, the Description of Coverage is void from the beginning. After this 10-day period, the payment for this coverage is nonrefundable.

## DEFINITIONS

"you", "your" and "yours" refer to the Insured. "we", "us" and "our" refer to the company providing this coverage. In addition, certain words and phrases are defined as follows:

ACCIDENT means a sudden, unexpected, unintended and external event, which causes Injury.

ACCOMMODATION means any establishment used for the purpose of temporary overnight lodging for which a fee is paid and reservations are required.

ACTUAL CASH VALUE means purchase price less depreciation.

ADOPTION PROCEEDING means any mandatory meeting as a condition of law requiring the attendance of the prospective adoptive parent(s) with the intent to create a legal parent-child relationship.

AIR FLIGHT ACCIDENT means an Accident that occurs while a passenger in or on, boarding or alighting from an aircraft of a regularly scheduled airline or an air charter company that is licensed to carry passengers for hire.

BAGGAGE means luggage, personal possessions and travel documents taken by you on your Trip.

BUSINESS EQUIPMENT means physical property owned by you used in trade, business, or for the production of income, taken by you for use on your Trip, excluding software, data, and any items defined as Baggage within this Policy.

COMMON CARRIER means any land, water or air conveyance, with scheduled and published departure and arrival times, operated under a license for the transportation of passengers for hire, not including taxicabs or rented, leased or privately owned motor vehicles.

DOMESTIC PARTNER means a person who is at least eighteen years of age and you can show: (1) evidence of financial interdependence, such as joint bank accounts or credit cards, jointly owned property, and mutual life insurance or pension beneficiary designations; (2) evidence of cohabitation for at least the previous 6 months; and (3) an affidavit of domestic partnership if recognized by the jurisdiction within which you reside.

ELECTIVE TREATMENT AND PROCEDURES means any medical treatment or surgical procedure that is not medically necessary including any service, treatment, or supplies that are deemed by the federal, or a state or local government authority, or by us to be research or experimental or that is not recognized as a generally accepted medical practice.

FAMILY MEMBER means
•Traveling Companion(s)
•Insured's or Traveling Companion's Spouse
•Insured's, Traveling Companion's or Spouse's:
   • child;
   • parent;
   • sibling;
   • grandparent, great-grandparent, grandchild or great-grandchild;
   • step-parent, step-child or step-sibling;
   • son-in-law or daughter-in-law;

   • brother-in-law or sister-in-law;
   • aunt or uncle;
   • niece or nephew;
   • legal guardian;
   • foster child or legal ward.

FINANCIAL INSOLVENCY means the total cessation or complete suspension of operations due to insolvency, with or without the filing of a bankruptcy petition, whether voluntary or involuntary, by a tour operator, cruise line, airline, rental car company, hotel, condominium, railroad, motor coach company, or other supplier of travel services which is duly licensed in the jurisdiction of operation other than the entity or the person, organization, agency or firm from whom you directly purchased or paid for your Trip, provided the Financial Insolvency occurs more than 14 days following your effective date for the Trip Cancellation Benefits. There is no coverage for the total cessation or complete suspension of operations for losses caused by fraud or negligent misrepresentation by the supplier of travel services.

HOME means your primary or secondary residence.

HOSPITAL means an institution that meets all of the following requirements: (1) it must be operated according to law; (2) it must give 24-hour medical care, diagnosis and treatment to the sick or injured on an inpatient basis; (3) it must provide diagnostic and surgical facilities supervised by Physicians; (4) registered nurses must be on 24-hour call or duty; and (5) the care must be given either on the hospital's premises or in facilities available to the hospital on a prearranged basis. A Hospital is not: a rest, convalescent, extended care, rehabilitation or other nursing facility; a facility which primarily treats mental illness, alcoholism, or drug addiction (or any ward, wing or other section of the hospital used for such purposes); or a facility which provides hospice care (or wing, ward or other section of a hospital used for such purposes).

HOST means the person with whom you are scheduled to share pre-arranged overnight accommodations in his/her principal place of residence.

INJURY means bodily harm caused by an Accident which requires the in-person examination and treatment by a Physician. The Injury must be the direct cause of loss and must be independent of all other causes and must not be caused by, or result from, Sickness.

INSURED means the person named on the application form, for whom the required premium payment is received and a Trip is scheduled.

INSURER means Generali US Branch. Generali US Branch operates under the following names:

In California: Generali Assicurazioni Generali S.p.A. (U.S. Branch)

In Virginia: The General Insurance Company of Trieste and Venice – U.S. Branch

OTHER VALID AND COLLECTIBLE HEALTH INSURANCE means any policy or contract which provides for payment of medical expenses incurred because of Physician, nurse, dental or Hospital care or treatment; or the performance of surgery or administration of anesthesia. The policy or contract providing such benefits includes, but is not limited to, group or blanket insurance policies; service plan contracts; employee benefit plans; or any plan arranged through an employer, labor union, employee benefit association or trustee; or any group plan created or administered by the federal or a state or local government or its agencies. In the event any other group plan provides for benefits in the form of services in lieu of monetary payment, the usual and customary value of each service rendered will be considered a covered expense.

PAYMENTS means the cash, check, credit card amounts paid for your Trip, including but not limited to reservation costs, timeshare exchange fees, ownership dues (not including the cost of your vacation ownership) and maintenance fees. Payments also include the units of currency purchased from a travel or vacation club to be used as valuation in payment for arrangements and to access travel arrangements (including but not limited to points, credits or other values). Such currency units must be used in accordance with travel or vacation club rules and must be for travel under a membership or for a deeded real estate product. In the case of currency units, we reserve the right to replace, restore or replenish your currency units in lieu of reimbursement.

PHYSICIAN means a person licensed as a medical doctor by the jurisdiction in which he/she is resident to practice the healing arts. He/she must be practicing within the scope of his/her license for the service or treatment given and may not be you, a Traveling Companion, or a Family Member of yours.

PORT OF CALL means a city or town on a waterway with facilities for loading and unloading cargo where a ship is scheduled to dock, not including the ports of embarkation and disembarkation.

PRE-EXISTING CONDITION means a Sickness or Injury during the 60-day period immediately prior to your effective date for which you or your Traveling Companion: (1) received, or received a recommendation for, a diagnostic test, examination, or medical treatment; or (2) took or received a prescription for drugs or medicine. Item 2 of this definition does not apply to a condition which is treated or controlled solely through the taking of prescription drugs or medicine and remains treated or controlled without any adjustment or change in the required prescription throughout the 60-day period before coverage is effective under this Policy.

PROGRAM ADMINISTRATOR means USA Travel Protection

QUARANTINE means the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests.

SCHEDULED DEPARTURE DATE means the date on which you are originally scheduled to leave on your Trip.

SCHEDULED RETURN DATE means the date on which you are originally scheduled to return to the point where the Trip started or to a different final destination.

SCHEDULED TRIP DEPARTURE CITY means the city where the scheduled Trip on which you are to participate originates.

SERVICE ANIMAL means any guide dog, signal dog, or other animal individually trained to work or perform tasks for the benefit of an individual with a disability, including, but not limited to, guiding persons with impaired vision, alerting persons with impaired hearing to intruders or sounds, providing animal protection or rescue work, pulling a wheelchair, or fetching dropped items.

SICKNESS means an illness or disease of the body that requires in-person examination and treatment by a Physician.

SPOUSE means your legally wed husband/wife or Domestic Partner as defined by this Policy.

TERRORIST ACT means an act of violence, other than civil disorder or riot, (that is not an act of war, declared or undeclared) that results in loss of life or major damage to property, by any person acting on behalf of or in connection with any organization which is generally recognized as having the intent to overthrow or influence the control of any government.

TRAVELING COMPANION means a person who, during the Trip, will accompany you in the same accommodations.

TRIP means:
A period of round-trip travel at least 100 miles away from Home to your designated vacation destination associated with the purchase of this insurance, excluding regular commuting and local travel; the purpose of the Trip is business or pleasure and is not to obtain health care or treatment of any kind; the Trip has defined departure and return dates specified when you purchase the coverage; the Trip does not exceed 180 days in length; or

A period of one-way travel that starts in the U.S. or Canada (except U.S. citizens may begin their Trip outside the U.S., if returning to the U.S.); the purpose of the Trip is business or pleasure and is not to obtain health care or treatment of any kind; the Trip has defined departure and arrival dates and defined departure and arrival places specified when you apply; and the Trip does not exceed 31 days in length.

UNINHABITABLE means the dwelling is not suitable for human occupancy in accordance with local public safety guidelines.

USUAL AND CUSTOMARY CHARGE means those charges: (1) for necessary treatment and services that are reasonable for the treatment of cases of comparable severity and nature; (2) that do not exceed the usual level of charges for similar treatment, supplies or medical services in the locality where the expense is incurred; and (3) does not include charges that would not have been made if no insurance existed. In no event will Usual and Customary Charges exceed the actual amount charged.

## GENERAL EXCLUSIONS

1. We will not pay for any loss under this Policy, caused by, or resulting from:

   a. your or your Traveling Companion's suicide, attempted suicide, or intentionally self-inflicted injury;

   b. mental, nervous, or psychological disorders of you or your Traveling Companion;

   c. you or your Traveling Companion being under the influence of drugs or intoxicants, unless prescribed by a Physician;

   d. normal pregnancy or resulting childbirth, elective abortion or fertility treatment of you or your Traveling Companion;

   e. your or your Traveling Companion's participation as a professional in athletics;

   f. your or your Traveling Companion's participation in organized amateur and interscholastic athletic or sports competition or events;

   g. you or your Traveling Companion riding or driving in any motor competition;

   h. you or your Traveling Companion operating or learning to operate any aircraft, as pilot or crew;

   i. you or your Traveling Companion mountain climbing, bungee cord jumping, skydiving, parachuting, hang gliding, parasailing, caving, extreme skiing, heli-skiing, skiing outside marked trails, boxing, full contact martial arts, scuba diving below 120 feet (40 meters) or without a dive master, or travel on any air-supported device, other than on a regularly scheduled airline or air charter company;

   j. your or your Traveling Companion's Elective Treatment and Procedures;

   k. your or your Traveling Companion's medical treatment during or arising from a Trip undertaken for the purpose or intent of securing medical treatment;

l. declared or undeclared war, or any act of war;

m. nuclear reaction, radiation or radioactive contamination;

n. any unlawful acts, committed by you or your Traveling Companion;

o. any amount paid or payable under any Worker's Compensation, disability benefit or similar law;

p. a loss or damage caused by detention, confiscation or destruction by customs or any governmental authority, regulation or prohibition;

q. travel restrictions imposed for a certain area by governmental authority;

r. Financial Insolvency of the person, organization or firm from whom you directly purchased or paid for your Trip, Financial Insolvency which occurred, or for which a petition for bankruptcy was filed by a travel supplier, before your effective date for the Trip Cancellation Benefits, or Financial Insolvency which occurs within 14 days following your effective date for the Trip Cancellation Benefits;

s. a loss that results from an illness, disease, or other condition, event or circumstance which occurs at a time when coverage is not in effect for you;

t. any issue or event that could have been reasonably foreseen or expected when you purchased the coverage.

**The following exclusion applies to the Medical and Dental Coverage and Emergency Assistance and Transportation coverages:**

We will not pay for loss caused by or resulting from service in the armed forces of any country.

**The following exclusion applies to the Medical and Dental, Trip Cancellation, Trip Interruption, and Travel Delay coverages:**

We will not pay for loss or expense caused by or incurred resulting from a Pre-Existing Condition, as defined in the Definitions section, including death that results there from.

**The following exclusion applies to the Emergency Assistance and Transportation, Medical and Dental, Trip Cancellation, and Trip Interruption coverages:**

a. civil disorder

**The following exclusion applies to the Emergency Assistance and Transportation, Medical and Dental, Trip Cancellation, Trip Interruption, Travel Delay coverages:**

a. failure of any tour operator, Common Carrier, or other travel supplier, person or agency to provide the bargained-for travel arrangements other than Financial Insolvency.

## CLAIMS PROVISIONS

### Notice of Claim

We must be given written notice of claim within 90 days after a covered loss occurs. If notice cannot be given within that time, it must be given as soon as reasonably possible. Notice may be given to us or to our authorized agent. Notice should include the claimant's name and sufficient information to identify him or her.

### Proof of Loss

Written Proof of Loss must be sent to us within 90 days after the date the loss occurs. We will not reduce or deny a claim if it was not reasonably possible to give us written Proof of Loss within the time allowed. In any event, you must give us written Proof of Loss within twelve (12) months after the date the loss occurs unless you are medically or legally incapacitated.

### Your Duty to Cooperate

You must provide us with receipts, proof of payment, medical authorizations, or other records and documents we may reasonably require concerning your claim. Failure or refusal to cooperate may delay or impede the resolution of your claim.

### Physical Examination and Autopsy

At our expense, we have the right to have you examined as often as necessary while a claim is pending. At our expense, we may require an autopsy unless the law or your religion forbids it.

### Legal Actions

No legal action may be brought to recover on the Policy within 60 days after written Proof of Loss has been given. No such action will be brought after three years from the time written Proof of Loss is required to be given. If a time limit of the Policy is less than allowed by the laws of the state where you live, the limit is extended to meet the minimum time allowed by such law.

### Payment of Claims

Benefits for loss of life will be paid to your estate, or if no estate, to your beneficiary. All other benefits are paid directly to you, unless otherwise directed. In the event you assign your benefits under this Policy to another party, any and all claim benefits will be distributed accordingly. Any accrued benefits unpaid at your death will be paid to your estate, or if no estate, to your beneficiary. If you have assigned your benefits, we will honor the assignment if it has been filed with us. We are not responsible for the validity of any assignment.

TRAVEL INSURANCE IS UNDERWRITTEN BY
Generali US Branch

Policy Form series T001

## HOW TO PRESENT A CLAIM

All claims should be presented to the Program Administrator:

CSA Travel Protection
P. O. Box 939057
San Diego, CA 92193-9057
(800) 541-3522 (Toll-Free)

### Our Right to Recover and Subrogate from Others

We have the right to recover any payments we have made from anyone who may be responsible for the loss, as permitted by law. You and anyone else we insure must sign any papers, and do whatever is necessary to transfer this right to us. You and anyone else we insure will do nothing after the loss to affect our right.

## GENERAL PROVISIONS

### CANCELLATION BY US

You have purchased single pay, single term, non-renewable insurance coverage. We have no unilateral right to cancel this coverage after it became effective.

### CONCEALMENT OR FRAUD

We do not provide coverage if you have intentionally concealed or misrepresented any material fact or circumstance relating to this coverage.

### DUPLICATION OF COVERAGE

You may be covered under only one travel policy with us for each Trip. If you are covered under more than one such policy, the policy with the higher coverage limit will remain in effect and the maximum benefit limit as stated in the Schedule of Coverage of such policy will be the maximum benefit payable in the event a claim occurs. In the event claim payment has been made under the duplicate policy, premiums paid less claims paid will be refunded for the duplicate coverage that does not remain in effect.

### ENTIRE CONTRACT: CHANGES

The Policy may be changed at any time by written agreement between us. Only our President, Vice President or Secretary may change or waive the provisions of the Policy. No agent or other person may change the Policy or waive any of its terms. The change will be endorsed on the Policy.

### TRANSFER OF THE INSURED'S RIGHTS AND DUTIES UNDER THIS POLICY

The Insured's rights and duties may not be transferred without our written consent except: 1) in the case of death of an individual named Insured, or 2) at our option, we will honor an assignment of rights if a properly executed assignment of rights has been filed with us.

## ELIGIBILITY AND EFFECTIVE DATES

### Who is Eligible for Coverage
Coverage will be provided for all travelers, provided the required premium payment has been received by us or our authorized agent, and provided the person is a resident of the United States of America, or a non-resident who has purchased the coverage in the United States of America.

### When Coverage Begins
All coverages (except Trip Cancellation and Trip Interruption) will take effect on the later of:

1. the date the premium payment has been received by us; or
2. the date and time you start your Trip; or
3. 12:01 A.M. local time at your location on the Scheduled Departure Date of your Trip.

Trip Cancellation coverage will take effect at 12:01 A.M. local time at your location on the day after the date your premium payment is received by us or our authorized agent. Trip Interruption coverage will take effect on the Scheduled Departure Date of your Trip if the required premium payment is received.

### When Coverage Ends
Your coverage automatically ends on the earlier of:

1. the date the Trip is completed; or
2. the Scheduled Return Date; or
3. your arrival at the return destination on a round trip, or the destination on a one-way trip; or cancellation of the Trip covered by the Policy.

### Extension of Coverage
All coverages under the Policy will be extended if your entire Trip is covered by the Policy and your return is delayed by unavoidable circumstances beyond your control. If coverage is extended for the above reasons, coverage will end on the earlier of the date you reach your originally scheduled return destination or seven (7) days after the Scheduled Return Date.

No coverage is in effect for any Trip that is made by mass transit, taxi, limousine service, personal automobile, bus, commuter rail or airline service including inter-urban rail service, unless the Trip is scheduled to take you at least 100 miles from your primary residence.

T001TC01.01DOC (05/11)

## ACCIDENTAL DEATH AND DISMEMBERMENT – AIR FLIGHT ACCIDENT

We will pay this benefit, up to the amount on the Schedule, if you are injured in an Air Flight Accident, which occurs while you are on a Trip, and covered under the Policy, and you suffer one of the losses listed below within 365 days

of the Air Flight Accident. The principal sum is the benefit amount shown in the Schedule.

| Loss: | Percentage of Principal Sum Payable: |
|---|---|
| Life | 100% |
| Both Hands; Both Feet and Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and Sight of One Eye | 100% |
| One Foot and Sight of One Eye | 100% |
| One Hand; One Foot or Sight of One Eye | 50% |

If you suffer more than one loss from one Air Flight Accident, we will pay only for the loss with the larger benefit. Loss of a hand or foot means complete severance at or above the wrist or ankle joint. Loss of sight of an eye means complete and irrecoverable loss of sight.

### Exposure and Disappearance
If by reason of an Air Flight Accident covered by the Policy, you are unavoidably exposed to the elements and as a result of such exposure suffer a loss for which benefits are otherwise payable; such loss shall be covered hereunder. If you are involved in an Air Flight Accident which results in the sinking or wrecking of a conveyance in which you were riding and your body is not located within one year of such Air Flight Accident, it will be presumed that you suffered loss of life resulting from Injury caused by the Air Flight Accident.

### Exclusions
We will not pay for loss caused by or resulting from:

1. Sickness of any kind;
2. service in the armed forces of any country.

T001BR01.01NW (05/11)

## BAGGAGE COVERAGE

We will reimburse you, up to the amount shown in the Schedule, less any amounts payable under your homeowner's or renter's insurance, for direct loss, theft, damage or destruction of your Baggage, passports or visas during your Trip, provided you have taken reasonable steps to protect your Baggage against loss, theft, damage and destruction. Under this coverage, we will also provide benefits for the administrative fees to reissue lost, stolen or damaged tickets, visas or passports.  We will also pay for loss due to unauthorized use of your credit cards, if you have complied with all of the credit card conditions imposed by the credit card companies.

### Valuation and Payment of Loss
Payment of loss under the Baggage Benefit will be calculated based upon an Actual Cash Value basis. For items without receipts, payment of loss will be calculated

based upon 75% of the Actual Cash Value at the time of loss. At our option, we may elect to repair or replace your Baggage.

We may take all or part of damaged Baggage as a condition for payment of loss. In the event of a loss to a pair or set of items, we will:

1. repair or replace any part to restore the pair or set to its value before the loss; or
2. pay the difference between the value of the property before and after the loss.

### Continuation of Coverage
If the covered Baggage, passports or visas are in the custody of a Common Carrier, and delivery is delayed, this coverage will continue until the property is delivered to you. This continuation of coverage does not include loss caused by or resulting from the delay.

### Items Not Covered
We will not pay for damage to or loss of:

1. animals; or
2. Business Equipment, household furniture, musical instruments, brittle or fragile articles; or
3. boats, motors, motorcycles, motor vehicles, aircraft, and other conveyances or equipment, or parts for such conveyances; or
4. artificial limbs or other prosthetic devices, artificial teeth, dental bridges, dentures, dental braces, retainers or other orthodontic devices, hearing aids, any type of eyeglasses, sunglasses or contact lenses; or
5. documents or tickets (except for administrative fees required to reissue tickets, as noted above); or
6. money, stamps, stocks and bonds, postal or money orders, securities, accounts, bills, deeds, food stamps or credit cards, except as noted above; or
7. property shipped as freight or shipped prior to the Scheduled Departure Date; or
8. telephones, computer hardware or software; or
9. consumables, medicines, perfumes, cosmetics and perishables; or
10. items seized by any government, government official or customs official; or
11. illegal drugs and contraband.

### Losses Not Covered
We will not pay for loss arising from:

1. defective materials or craftsmanship; or
2. normal wear and tear, gradual deterioration, inherent vice; or
3. rodents, animals, insects or vermin; or
4. mysterious disappearance; or

5.  electrical current, including electric arcing that damages or destroys electrical devices or appliances.

Your Duties in the Event of a Loss

In case of loss, theft or damage to Baggage, you must:

1.  immediately report the incident to the hotel manager, tour guide or representative, transportation official, local police or other local authorities and obtain their written report of your loss; and

2.  take reasonable steps to protect your Baggage from further damage, and make necessary, reasonable and temporary repairs. We will reimburse you for these expenses. We will not pay for further damage if you fail to protect your Baggage.

T001BR03.01NW (05/11)

## BAGGAGE DELAY COVERAGE

We will reimburse you, up to the amount shown in the Schedule, for the cost of reasonable additional clothing and personal articles purchased by you, if your Baggage is delayed for 24 hours or more during your Trip. We will reimburse you up to the amount shown in the Schedule for expenses incurred during your Trip to locate/track your delayed Baggage, and to retrieve your delayed Baggage or to have your delayed Baggage delivered to you.  We will also reimburse you for the cost to launder your clothing during the time your Baggage is delayed.

Limitations
This coverage terminates when your Baggage is retrieved or returned to you, or upon your arrival at the return destination of your Trip, whichever occurs first.

T001BR04.01NW (05/11)

## EMERGENCY ASSISTANCE AND TRANSPORTATION

We will pay this benefit, up to the amount on the Schedule, for the following Covered Expenses incurred by you, subject to the following:

1.  Covered Expenses will only be payable at the Usual and Customary level of payment; and

2.  Benefits will be payable only for covered expenses listed below resulting from a Sickness that first manifests itself or an Injury that occurs while on a Trip; and

3.  Benefits payable as a result of incurred covered expenses will only be paid after benefits have been paid under any Other Valid and Collectible Health Insurance in effect for you. We will pay that portion of covered expenses, which exceeds the amount of benefits payable for such expenses under your Other Valid and Collectible Health Insurance.

Covered Expenses:

1.  Expenses incurred by you for Physician-ordered emergency medical evacuation, including medically appropriate transportation and necessary medical care en route, to the nearest suitable Hospital, when you are critically ill or injured and no suitable local care is available, subject to prior approval by us or our authorized agent;

2.  Expenses incurred for non-emergency repatriation, including medically appropriate transportation and medical care en route, to a Hospital or to your place of residence in the United States of America, when deemed medically necessary by the attending physician, subject to prior approval by us or our authorized agent.  In lieu or returning to your place of residence, you may opt to be returned to a different city in the United States if proper care for your condition is not available;

3.  Expenses for transportation (not to exceed the cost of one round-trip economy-class air fare, to the place of hospitalization), and expenses for reasonable hotel accommodations, meals, telephone calls and local transportation for one person chosen by you up to the amount in the Schedule, provided that you are traveling alone and are hospitalized for more than **7** days;

4.  Expenses for transportation, not to exceed the cost of one-way economy-class air fare, to your place of residence in the United States of America, including escort expenses, if you are 17 years of age or younger and left unattended due to the death or hospitalization of an accompanying adult(s), subject to prior approval by us or our authorized agent;

5.  Expenses for one-way economy-class air fare (or first class, if your original tickets were first class) to your place of residence in the United States of America, from a medical facility to which you were previously evacuated, less any refunds paid or payable from your unused transportation tickets, if these expenses are not covered elsewhere in the plan;

6.  Repatriation expenses for preparation and air transportation of your remains to your place of residence or a funeral home in the United States of America, or up to an equivalent amount for a local burial in the country where death occurred, if you die while outside the United States of America.

T001BR05.01NW (05/11)

## MEDICAL AND DENTAL COVERAGE

We will pay this benefit, up to the amount on the Schedule, for the following covered expenses incurred by you, subject to the following:

1.  Covered expenses will only be payable at the Usual and Customary level of payment; and

2.  Benefits will be payable only for covered expenses resulting from a Sickness that first manifests itself or an Injury that occurs while on a Trip; and

3.  Benefits payable as a result of incurred covered expenses will only be paid after benefits have been paid under any Other Valid and Collectible Health Insurance in effect for you. This coverage is in excess to any other health insurance you have available to you at the time of the loss.  You must submit your claim to that provider first.  Any benefits you receive from your primary or supplementary insurance providers will be deducted from your claim with us.

Covered Expenses:

1.  Expenses for the following Physician-ordered medical services: services of legally qualified Physicians and graduate nurses, charges for Hospital confinement and services, local ambulance services, prescription drugs and medicines, and therapeutic services, incurred by you within one year from the date of your Sickness or Injury during a Trip; and

2.  Expenses for emergency dental treatment incurred by you during a Trip up to the amount in the Schedule.

Your duties in the event of a Medical or Dental Expense:

1.  You must provide us with all bills and reports for medical and/or dental expenses claimed.

2.  You must provide any requested information related to the claimed expense(s), including but not limited to, an explanation of benefits from any other applicable insurance.

3.  You must sign a patient authorization to release any information required by us, to investigate your claim.

Please refer to the Definitions, for an explanation of Pre-Existing Conditions, which are excluded under the Medical or Dental Expense Benefits.

Coordination of Benefits

If you reside in CT, ID, IL, and excess coverage for Medical and Dental Expense Benefits is not permitted, then coordination of benefit provisions in accordance with the laws and regulations in your state will apply in lieu of the excess coverage provisions.

**Coordination of Benefits**
**1.  Applicability**

a.  This Coordination of Benefits ("COB") provision applies to This Policy when you or your covered dependent has health care coverage under more than one Policy.  "Policy" and "This Policy" are defined below.

b.  If this COB provision applies, the order of benefit determination rules should be looked at first.

Those rules determine whether the benefits of This Policy are determined before or after those of another policy.  The benefits of This Policy:

i. Will not be reduced when, under the order of benefit determination rules, This Policy determines its benefits before another Policy; but

ii. May be reduced when, under the order of benefits determination rules, another policy determines its benefits first.

**2. Definitions**

a. "Policy" is any of these which provides benefits or services for, or because of, medical or dental care or treatment:

i. Policy will include:

1. group insurance and group subscriber contracts;

2. uninsured arrangements of group or group type coverage;

3. group or group type coverage through HMOs and other prepayment, group practice and individual practice policies;

4. group type contracts. Group type contracts are contracts which are not available to the general public and can be obtained and maintained only because of membership in or connection with a particular organization or group.  Individually underwritten and issued guaranteed renewable policies would not be considered group type even though purchased through payroll deductions at the premium savings to the Insured since the Insured would have the right to maintain or renew the Policy independently of continued employment with the Policyholder;

5. the medical benefits coverage in group automobile no-fault contracts, and in traditional automobile fault type contracts to the extent that such contracts are Primary Policies; and

6. Medicare or other governmental benefits, except as provided in subsection (ii)(7) below. That part of the definition of Policy may be limited to the hospital, medical and surgical benefits of the governmental program.

ii. Policy will not include:

1. individual or family insurance contracts;

2. individual or family subscriber contracts;

3. individual or family coverage through Health Maintenance Organizations (HMOs):

4. individual or family coverage under other prepayment, group practice and individual practice policies;

5. group or group type coverage of hospital indemnity benefits of $100.00 per day or less;

6. school Accident type coverages; these contracts cover grammar, high school and college student for Accidents only, including athletic injuries, either on a 24 hour basis or on a to and from school basis; and

7. state policy under Medicaid, and will not include a law or policy when, by law, its benefits are in excess of those of any private insurance policy or other non-government policy.

Each contract or other arrangement for coverage under (1) or (1) is a separate policy.  Also, if an arrangement has two parts and COB rules apply only to one of the two, each of the parts is a separate policy.

b. "This Policy" is this Policy.

c. "Primary Policy/Secondary Policy" – The order of benefit determination rules state whether This Policy is a Primary Policy or a Secondary Policy as to another policy covering the person.When This Policy is a Primary Policy, its benefits are determined before those of the other policy and without considering the other policy's benefits. When This Policy is a Secondary Policy, its benefits are determined after those of the other policy and may be reduced because of the other policy's benefit.When there are more than two policies covering the person, This Policy may be a Primary Policy as to one or more other policies, and may be a Secondary Policy as to a different policy or policies.

d. "Allowable Expense" means a necessary, reasonable and customary item of expense for health care; when the item of expense is covered at least in part by one or more policies covering the person for whom the claim is made.  When a policy provides benefits in the form of services, the reasonable cash value of each service rendered will be considered both an Allowable Expense and a benefit paid.

The following are examples of expenses or services that are not allowable expenses:

i. If an Insured Person is confined in a private hospital room, the difference between the cost of a semi-private room in the hospital and the private room (unless the patient' stay in a private room is medically necessary in terms of generally accepted medical practice, or one of the policies routinely provides coverage for hospital private rooms) is not an allowable expense.

ii. If a person is covered by two or more plans that compute his/her benefit payments on the basis of usual and customary fees, any amount in excess of the highest of the usual and customary fees for a specific benefit is not an allowable expense.

iii. If a person is covered by two or more plans that provide benefits or services on the basis of negotiated fees, an amount in excess of the highest of the negotiated fees is not an allowable expense.

iv. If a person is covered by one plan that calculates its benefits or services on the basis of usual and customary fees and another plan that provides its benefits or services on the basis of negotiated fees, the primary policy's payment arrangements will be the allowable expense for all policies.

v. The amount a benefit is reduced by the primary policy because an Insured Person does not comply with the policy provisions. Examples of these provisions are second surgical opinions, pre-certification of admissions or services and preferred provider arrangements.

e. "Claim Determination Period" means a calendar year.  However, it does not include any part of a year during which a person has no coverage under This Policy, or any part of a year before the date this COB provision or a similar provision takes effect.

**3. Order of Benefit Determination Rules**

a. General – When there is a basis for a claim under This Policy and another policy, This Policy is a Secondary Policy which has its benefits determined after those of the other policy, unless:

i. The other policy has rules coordinating its benefits with those of This Policy; and

ii. Both those rules and This Policy rules, in Sub-section B below, require that This Policy's benefits be determined before those of the other policy.

b. Rules – This Policy determines its order of benefits using the first of the following rules which applies.

i. Non-Dependent – the benefits of the policy which covers the person as a subscriber (that is, other than as a dependent) are determined before those of the policy which covers the person as a dependent.

ii. Dependent Child/Parents not Separated or Divorced – except as stated in paragraph B(3) below, when This Policy and another

policy cover the same child as a dependent of different persons, called "parents":

1. The benefits of the policy of the parent whose birthday falls earlier in a year are determined before those of the policy of the parent whose birthday falls later in that year, but

2. If both parents have the same birthday, the benefits of the policy which covered one parent longer are determined before those of the policy which covered the other parent for a shorter period of time.

   However, if the other policy does not have the rule described in (1) immediately above, but instead has a rule based upon the gender of the parent, and if, as a result, the policies do not agree on the order of benefits, the rule in the other policy will determine the order of benefits.

3. Dependent Child/Separated or Divorced Parents – If two or more policies cover a person as a dependent child of divorced or separated parents, benefits for the child are determined in this order:

a. First, the policy of the parent with custody of the child;

b. Then, the policy of the spouse of the parent with the custody of the child; and

c. Finally, the policy of the parent not having custody of the child.

   However, if the specific terms of a court decree state that one of the   parents is responsible for the health care expenses of the child, and the entity obligated to pay or provide the benefits of the Policy of that parent has actual knowledge of those terms, the benefits of that Policy are determined first.  The Policy of the other parent will be the Secondary Policy.  This paragraph does not apply with respect to any Claim Determination Period or Policy Year during which any benefits are actually paid or provided before the entity has that actual knowledge.

4. Joint Custody – If the specific terms of a court decree state that the parents will share joint custody, without stating that one of the parents is responsible for the health care expenses of the child, the policies covering the child will follow the order of benefit determination rules outlined in paragraph B(2).

5. Active/Inactive Member – The benefits of a policy which covers a person as an employee who is neither laid off nor retired are determined before those of a policy which covers that person as a laid off Member.  The same applies if a person is a dependent of a person covered as a Member.  If the other policy does not have this rule, and if, as a result, the policies do not agree on the order of benefits, this Rule (5) is ignored.

6. Continuation Coverage – If a person whose coverage is provided under a right of continuation pursuant to federal or state law also is covered under another policy, the following will be the order of benefit determination:

a. First, the benefits of a policy covering the person as a Member or subscriber (or as that person's dependent);

b. Second, the benefits under the continuation coverage.

   If the other policy does not have the rule described above, and if, as a result, the policies do not agree on the order of benefits, this rule is ignored.

7. Longer/Shorter Length of Coverage – If none of the above rules determines the order of benefits, the benefits of the policy which covered a Member or subscriber longer are determined before those of the Policy which covered that person for the shorter term.

**4.** **Effect on the Benefits of This Policy**

a. When this Section Applies – this Section 4 applies when, in accordance with Section 3, "Order of Benefit Determination Rules", This Policy is a Secondary Policy as to one or more other policies. In that event, the benefits of This Policy may be reduced under this section.  Such other policy or policies are referred to as "the other policies" in 4(b) immediately below.

b. Reduction in This Policy's Benefits – The benefits of This Policy will be reduced when the sum of:

i. The benefits that would be payable for the Allowable Expenses under This Policy in the absence of this COB provision; and

ii. The benefits that would be payable for the Allowable Expenses under the other policies, in the absence of provisions with a purpose like that of this COB provision, whether or not claim is made; exceeds those Allowable Expenses in a Claim Determination Period.  In that case, the benefits of This Policy will be reduced so that they and the benefits payable under the other policies do not total more than those Allowable Expenses.  When the benefits of This Policy are reduced as described above, each benefit is reduced in proportion.  It is then charged against any applicable benefit limit of This Policy.

T001BR07.01NW (05/11)

**TRAVEL DELAY COVERAGE**

If you are delayed on your Trip for 12 hours or more, we will reimburse you, up to the amount shown in the Schedule for reasonable additional expenses incurred by you for lodging Accommodations, meals, telephone calls, local transportation, and additional vehicle parking charges and additional pet kennel fees incurred due to the delay. We will not pay benefits for expenses incurred after travel becomes possible.

Travel Delay must be caused by or result from:

a. delay of a Common Carrier; or

b. loss or theft of your passport(s), travel documents or money; or

c. Quarantine; or

d. hijacking; or

e. natural disaster or adverse weather; or

f. being directly involved in a documented traffic accident while you are en route to departure; or

g. unannounced strike; or

h. a civil disorder; or

i. Sickness or Injury of you or a Traveling Companion; or

j. death of a Traveling Companion.

T001BR13.01NW (05/11)

**TRIP CANCELLATION BENEFIT**

Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy.

In the event you used frequent flyer miles to arrange air transportation for this Trip, and you cancel due to a Covered Event, we will reimburse you for the cost to reinstate your miles to your account, up to the amount in the schedule.

Should you elect to reschedule your Trip arrangements instead of cancelling due to a Covered Event, in lieu of providing benefits for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments, we will pay for change fees charged by your supplier(s), up to the amount in the schedule.

In the event there is a change in the per person occupancy rate for your pre-paid arrangements as a result of a Traveling Companion canceling his or her Trip due to an unforeseeable Covered Event when you do not cancel, we will reimburse you for additional costs above the original

invoiced and pre-paid charge for your booking, up to the amount in the schedule, for Accommodations during the Trip as a result of the change.

Covered Events:

1. The Sickness, Injury or death of you, your Family Member, your Traveling Companion or your Service Animal. The Sickness or Injury must first commence while your coverage is in effect under the Policy, must require the in-person treatment by a Physician, and must be so disabling in the written opinion of a Physician as to prevent you from taking your Trip (either because your condition prevents your travel, or because your Family Member, Traveling Companion or your Service Animal requires your care);

2. Common Carrier delays and/or cancellations resulting from adverse weather, mechanical breakdown of the aircraft, ship, boat or motor coach that you were scheduled to travel on, or organized labor strikes that affect public transportation;

3. Being directly involved in a documented traffic accident while en route to departure on your Trip;

4. Being hijacked or Quarantined;

5. Being required to serve on a jury, or required by a court order to appear as a witness in a legal action provided you, a Family Member or a Traveling Companion is not a party to the legal action or appearing as a law enforcement officer;

6. Your Home made Uninhabitable by fire, flood, volcano, earthquake, hurricane or other natural disaster;

7. A documented theft of your passports or visas;

8. A mandatory evacuation (or public official evacuation advisement in geographic areas where no mandatory evacuation orders are issued by government authorities) at your destination due to adverse weather or natural disasters. We will only pay benefits for losses occurring within 30 calendar days after the evacuation order is issued. In order to cancel your Trip, you must have 4 days or 50% of your total Trip length or less remaining at the time the mandatory evacuation ends;

9. Being called into active military service to provide aid or relief in the event of a natural disaster;

10. A Terrorist Act which occurs in your Scheduled Trip Departure City or in a city to which you are scheduled to travel while on your Trip, and which occurs within 30 days of your Scheduled Departure Date, provided the city has not experienced a Terrorist Act in the past 30 days prior to the effective date of your coverage;

11. The school where you attend must extend its operating session beyond its predefined school year due to unforeseeable events commencing during the coverage effective period. The school year extension dates must fall in your Trip dates in order for this coverage to be available. Extensions due to extra-curricular or athletic events are not covered;

12. Being required to take an academic examination on a date that has been fixed after your coverage was purchased, and the examination date falls within your Trip dates;

13. Being unable to undergo a vaccination or inoculation, due to a medical reason, that is announced and published as required for entry into a country of destination after the effective date of your coverage. The vaccination or inoculation must be unannounced and unpublished to the public at the time your coverage is purchased;

14. Receiving official notification of an organ match available for immediate transplant, provided the transplant is considered medically necessary, the notification is received while coverage is in effect, and in the written opinion of the Physician the transplant surgery and/or recovery is so disabling as to prevent you from taking the Trip;

15. Receiving a court-issued notice to attend an Adoption Proceeding, provided you are not attending as a condition of your employment and provided the person being adopted is not you, your Traveling Companion or your Family Member. The date of the scheduled Adoption Proceeding must be announced while your coverage is in effect and must be during your Trip dates;

16. Receiving notice that your Adoption Proceeding or adoption arrangements have been cancelled or terminated, provided your Trip was for the purpose of executing the adoption and provided the Adoption Proceeding or adoption arrangement was confirmed prior to your effective date.

Limitations

This coverage is subject to the General Exclusions.

T001BR14.01NW (11/11)

## TRIP INTERRUPTION BENEFIT

If your arrival on your Trip is delayed beyond your Scheduled Departure Date, or if you are unable to continue the Trip due to one of the unforeseeable Covered Events listed below that occur during your Trip dates to you or your Traveling Companion, we will reimburse you for the unused, non-refundable land or water arrangements prepaid to the Travel Supplier prior to departing on your Trip, less any refunds paid or payable, plus one of the following:

a. Additional transportation expenses incurred to reach your scheduled destination if your departure is delayed and you leave after the Scheduled Departure Date and time; or

b. Additional transportation expenses incurred for you to reach the final return destination of your Trip; or

c. Additional transportation expenses incurred to rejoin the Trip in progress from the point where you interrupted your Trip.

We will also provide reimbursement for unused air arrangements, less any refunds paid or payable, provided that these are not flights scheduled to travel to your Trip destination or flights scheduled to your origin of departure on your Trip, and provided that these are not flights within 24 hours of your Scheduled Departure Date or Scheduled Return Date.

Covered Events:

1. The Sickness, Injury or death of you, your Family Member, your Service Animal or your Traveling Companion. The Sickness or Injury must first commence while your Trip Interruption coverage is in effect under the Policy, must require the in-person treatment by a Physician, and must be so disabling in the written opinion of a Physician as to prevent you from taking your Trip (either because your condition prevents your travel, or because your Family Member, Traveling Companion or your Service Animal requires your care);

2. Common Carrier delays and/or cancellations resulting from adverse weather, mechanical breakdown of the aircraft, ship, boat or motor coach that you were scheduled to travel on, or organized labor strikes that affect public transportation;

3. Being directly involved in a documented traffic accident while en route to departure on your Trip;

4. Being hijacked or Quarantined;

5. Being required to serve on a jury, or required by a court order to appear as a witness in a legal action provided you, a Family Member or a Traveling Companion is not a party to the legal action or appearing as a law enforcement officer;

6. Your Home made Uninhabitable by fire, flood, volcano, earthquake, hurricane or other natural disaster;

7. A documented theft of your passports or visas;

8. A mandatory evacuation (or public official evacuation advisement in geographic areas where no mandatory evacuation orders are issued by government authorities) at your destination due to adverse weather or natural disasters. We will only pay benefits for losses occurring within 30 calendar days after the evacuation order is issued. In order to receive benefits under this coverage to remain home or to return home when the mandatory evacuation ends, you must have 4 days or 50% of your total Trip length or less remaining on your Trip at the time the mandatory evacuation ends;

9. Being called into active military service to provide aid or relief in the event of a natural disaster;

10. A Terrorist Act which occurs in your departure city or in a city to which you are scheduled to travel while on your Trip, and which occurs within 30 days of your Scheduled Departure Date, provided the city has not experienced a Terrorist Act in the 30 days prior to the effective date of your coverage;

11. The school where you attend must extend its operating session beyond its predefined school year due to unforeseeable events commencing during the Policy effective period. The school year extension dates must fall in your Trip dates in order for this coverage to be available. Extensions due to extra-curricular or athletic events are not covered;

12. Being required to take an academic examination on a date that has been fixed while on your Trip, and the examination date falls within your Trip dates;

13. Being unable to undergo a vaccination or inoculation, due to a medical reason, that is announced and published as required for entry into a country of destination while on your Trip. The vaccination or inoculation must be unannounced and unpublished to the public at the time your coverage is purchased;

14. Receiving official notification of an organ match available to you for immediate transplant, provided the transplant is considered medically necessary, the notification is received while you are on your Trip, and in the written opinion of the Physician the transplant surgery and/or recovery is so disabling as to prevent you from continuing on your Trip;

15. Receiving a court-issued notice to attend an Adoption Proceeding, provided you are not attending as a condition of your employment and provided the person being adopted is not you, your Traveling Companion or your Family Member. The date of the scheduled Adoption Proceeding must be during your Trip dates;

16. Receiving notice that your Adoption Proceeding or adoption arrangements have been cancelled or terminated, provided your Trip was for the purpose of executing the adoption.

Limitations

Benefits payable for additional transportation expenses will not exceed the cost of airfare (the same class airfare on which you were originally booked) by the most direct route, less any refunds paid or payable.

This coverage is subject to the General Exclusions.

T001BR17.01NW (11/11)

---

**FOR ARKANSAS RESIDENTS**

### Form T001TC01.01DOC – GENERAL PROVISIONS

The following is added to **GENERAL PROVISIONS**

Inquiries or complaints regarding this Description of Coverage may be submitted to the Arkansas Insurance Department in writing or by phone. Contact information is:

Arkansas Insurance Department

Consumer Services Division

1200 W. 3rd Street

Little Rock, Arkansas 72201-1904

Telephone: 800-8525494 or 501-371-2640

### Form T001TC01.01DOC - CLAIMS PROVISIONS

The following change applies to **CLAIMS PROVISIONS**

The provision titled Legal Actions is deleted in its entirety and replaced with the following:

Legal Action

No legal action may be brought to recover on the plan within 60 days after written Proof of Loss has been given. No such action will be brought after five years from the time written Proof of Loss is required to be given. If a time limit of the plan is less than allowed by the laws of the state where you live, the limit is extended to meet the minimum time allowed by such law.

T001AD01.01AR (07/11)

---

**FOR CONNECTICUT RESIDENTS**

### Form T001TC01.01DOC- GENERAL EXCLUSIONS

The following changes in the General Exclusions section apply to Air Flight Accident, Travel Accident, Emergency Assistance & Transportation, and Medical & Dental Coverage:

Exclusion 1.c. "you or your Traveling Companion being under the influence of drugs or intoxicants, unless prescribed by a Physician" is deleted in its entirety and replaced with the following:

1.c. The voluntary use of any controlled substance as defined in Title 2 of the comprehensive Drug Abuse Prevention and Control Act of 1970, as now or hereafter amended unless as prescribed by his Physician for the Insured;

Exclusion 1.m. "nuclear reaction radiation or radioactive contamination" is deleted in its entirety.

---

any unlawful acts, committed by you or your Traveling Companion" is deleted in its entirety and replaced with the following:

1.n. Any felonious acts, committed by you or your Traveling Companion;

Exclusion 1.t. "any issue or event that could have been reasonably foreseen or expected when you purchased the coverage", is deleted in its entirety.

### Form T001BR07.01NW - MEDICAL AND DENTAL COVERAGE

When Medical and Dental Coverage is purchased, paragraph 3). is deleted in its entirety:

3) Benefits payable as a result of incurred covered expenses will only be paid after benefits have been paid under any Other Valid and Collectible Health Insurance in effect for you. This coverage is in excess to any other health insurance you have available to you at the time of the loss. You must submit your claim to that provider first. Any benefits you receive from your primary or supplementary insurance providers will be deducted from your claim with us.

### Form T001BR05.01NW – EMERGENCY ASSISTANCE AND TRANSPORTATION

When Emergency Assistance and Transportation is purchased, paragraph 3). is deleted in its entirety.

3) Benefits payable as a result of incurred covered expenses will only be paid after benefits have been paid under any Other Valid and Collectible Health Insurance in effect for you. We will pay that portion of covered expenses, which exceeds the amount of benefits payable for such expenses under your Other Valid and Collectible Health Insurance.

### Form T001TC01.01DOC - GENERAL PROVISIONS

The following is added to the General Provisions:

#### MASTERPOLICY

You can review the Master Policy by visiting the office of Generali US Branch located at 7 World Trade Center, 250 Greenwich Street, 33rd Floor, New York, 10007 NY during normal business hours. All certificate holders will be notified in the event of cancellation or nonrenewal of the Master Policy.

T001AD01.01CT (11/11)

**FOR IDAHO RESIDENTS**

### Form T001TC01.01DOC – GENERAL EXCLUSIONS

Exclusion 1. d. is deleted in its entirety and replaced with the following:

d. normal pregnancy or resulting childbirth, elective abortion (except to preserve the life of the female upon whom the abortion is performed) or fertility treatment of you or your Traveling Companion;

Exclusions 1. f. and 1. i. apply to Medical and Dental Coverage only when you or your Traveling Companion are participating as a professional.

### Form T001BR07.01NW - MEDICAL AND DENTAL COVERAGE

When Medical and Dental Coverage is purchased, paragraph 3. is deleted in its entirety:

3 Benefits payable as a result of incurred covered expenses will only be paid after benefits have been paid under any Other Valid and Collectible Health Insurance in effect for you. This coverage is in excess to any other health insurance you have available to you at the time of the loss. You must submit your claim to that provider first. Any benefits you receive from your primary or supplementary insurance providers will be deducted from your claim with us.

### Form T001TC01.01DOC – GENERAL PROVISIONS:

A provision **"Appeals" i**s added:

You may appeal any decision made by the Company to the Idaho Department of Insurance. Contact information follows.

Idaho Department of Insurance
Consumer Affairs
700 W. State Street, 3rd floor
P.O. Box 83720
Boise Idaho, 83720-0043
1-800-721-3272
www.DOI.Idaho.gov

T001AD01.01ID (06/11)

### FOR ILLINOIS RESIDENTS

### Form T001TC01.01DOC – GENERAL PROVISIONS

The following is added to **GENERAL PROVISIONS**

The CONCEALMENT OR FRAUD provision is deleted in its entirety and replaced with the following:

CONCEALMENT OR FRAUD. This insurance coverage shall be denied or cancelled if, whether before or after a Loss, the Insured has concealed or misrepresented any material fact or circumstance concerning the Policy or the subject thereof, or the Insured's interest therein, or if the Insured committed fraud or material misrepresentations in connection with this insurance coverage.

The following COMPLAINTS provision is added to GENERAL PROVISIONS:

Should the Insured have general complaints regarding this insurance, the Insured may submit a complaint in writing to the following address.

Illinois Division of Insurance

Consumer Division

Springfield, Illinois 62767

### Form T001TC01.01DOC – DEFINITIONS

The following is added to the **DEFINITIONS** section:

The ACCIDENT definition is deleted in its entirety and replaced with the following:

ACCIDENT means a sudden, unexpected, unforeseen event which happens by chance, arises from a source detached to the covered person.

UNDER THE INFLUENCE OF DRUGS OR INTOXICANTS is defined and determined by the laws of the state where the loss or cause of loss was incurred.

EMERGENCY MEDICAL CONDITION means a medical condition manifesting itself by acute symptoms of sufficient severity (including, but not limited to, severe pain) such that a prudent layperson, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in:

(1) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy;

(2) serious impairment to bodily functions; or

(3) serious dysfunction of any bodily organ or part.

### Form T001TC01.01DOC – GENERAL EXCLUSIONS

The following changes apply to **GENERAL EXCLUSIONS**:

Exclusions 1.e. and 1.f, are deleted in their entirety.

Exclusion 1.i. is deleted and replaced by the following:

1.i. you or your Traveling Companion Participating in skydiving; hang gliding; parachuting except parasailing;

Exclusion 1.n. is deleted and replaced by the following:

1.n. Commission or the attempt to commit a felony or to which a contributing cause was being engaged in an illegal occupation by the Insured, the Insured's Traveling Companion, or the Insured's Family Member, whether insured or not.

### Form T001TC01.01DOC – CLAIMS PROVISIONS

The following changes apply to **CLAIMS PROVISIONS**:

The OUR RIGHT TO RECOVER AND SUBROGATE FROM OTHERS provision is deleted in its entirety and replaced with the following:

Our Right to Recover and Subrogate from Others

We are assigned the right to recover from the negligent third party, or his or her insurer, to the extent of the benefits We paid for that sickness or injury. The Insured is required to furnish any information or assistance, or provide any documents that We may reasonably require in order to exercise our rights under this provision. This provision applies whether or not the third party admits liability.

The PAYMENT OF CLAIMS provision is deleted in its entirety and replaced with the following:

Payment of Claims

Benefits for loss of life will be paid to your estate, or if no estate, to your beneficiary within 30 days following receipt of written due proof of loss. All other benefits are paid directly to you, unless otherwise directed. In the event you assign your benefits under this Policy to another party, any and all claim benefits will be distributed accordingly. Any accrued benefits unpaid at your death will be paid to your estate, or if no estate, to your beneficiary. If you have assigned your benefits, we will honor the assignment if it has been filed with us. We are not responsible for the validity of any assignment.

### Form T001BR07.01NW – MEDICAL AND DENTAL COVERAGE

When the **Medical and Dental Coverage Form T001BR07.01NW** is attached, paragraph 3). is deleted and replaced with the following:

3. Insurance with other insurers. You may have other health insurance that is subject to the same terms, conditions and provisions as the insurance under this Policy. If you do, we will pay only the proportion of the loss that the limit of liability that applies under this Policy bears to the total amount of health insurance covering the loss.

T001AD01.01IL (08/11)

### IMPORTANT NOTICE:

This plan does not apply to the extent any US, UN or EU economic or trade sanctions, or other laws or regulations, prohibit CSA Travel Protection from providing insurance, and related services, including, but not limited to, the payment of any claims if paying the claim would violate any applicable sanction laws. Any expenses incurred or claims made involving travel, or travel related services that are in violation of such sanctions, laws or regulations will not be covered under this plan if paying the claim would violate

any applicable sanction laws. Any coverage provided under this plan in violation of any US, UN or EU economic or trade sanctions, or other laws or regulations, shall be null and void. To learn more please visit the US Treasury's website at www.treasury.gov/resource-center/sanctions.

T001NO01.01IL (06/18)

## FOR MARYLAND RESIDENTS

### Form T001TC01.01DOC- 10-DAY RIGHT TO EXAMINE YOUR DESCRIPTION OF COVERAGE

10-DAY RIGHT TO EXAMINE YOUR DESCRIPTION OF COVERAGE is deleted in its entirety and replaced with the following:

If you are not satisfied for any reason, you may cancel coverage under the policy within 10 days after receipt. Your premium payment will be refunded, provided that there has been no incurred covered expense and you have not left on your Trip. Return the Description of Coverage to us at the Program Administrators office or our authorized agent. After this 10-day period, the payment for this coverage is nonrefundable.

### Form T001TC01.01DOC - CLAIMS PROVISIONS

The following changes applies to **CLAIMS PROVISIONS**

The provision titled Legal Actions is deleted in its entirety and replaced with the following:

Legal Actions

No legal action may be brought to recover on the Policy within 60 days after written Proof of Loss has been given. No such action will be brought after three years from the date it accrues. If a time limit of the Policy is less than allowed by the laws of the state where you live, the limit is extended to meet the minimum time allowed by such law.

T001AD01.01MD (08/11)

### IMPORTANT NOTICE:

The Office of Foreign Assets Control ("OFAC") of the US Department of the Treasury administers and enforces economic and trade sanctions based on US foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of the United States.

This plan does not apply to the extent any US, UN or EU economic or trade sanctions, or other laws or regulations, including but not limited to OFAC, prohibit CSA Travel Protection from providing insurance, and related services,

including, but not limited to, the payment of any claims.

Any expenses incurred or claims made involving travel, or travel related services that are in violation of such sanctions, laws or regulations will not be covered under this plan. Any coverage provided under this plan in violation of any US, UN or EU economic or trade sanctions, or other laws or regulations, shall be null and void. To learn more please visit the US Treasury's website at www.treasury.gov/resource-center/sanctions.

The Company will provide written notice to the policyholder if the U.S. economic and trade sanctions apply to the policy and premiums will be refunded, to the extent allowed by OFAC regulations.

T001NO01.01MD (06/18)

## FOR MAINE RESIDENTS

### Form T001BR01.01NW - ACCIDENTAL DEATH AND DISMEMBERMENT AIR FLIGHT ACCIDENT and Form T001BR02.01NW

The following is added to ACCIDENTAL DEATH AND DISMEMBERMENT AIR FLIGHT ACCIDENT and ACCIDENTAL DEATH AND DISMEMBERMENT TRAVEL ACCIDENT:

Notwithstanding any provisions to the contrary, accidental death and dismemberment amounts payable under this Description of Coverage will be at least $2,000. Single dismemberment amounts payable will be at least $1,000.

### Form T001BR07.01NW - MEDICAL AND DENTAL COVERAGE

The following is added to MEDICAL AND DENTAL COVERAGE

Notwithstanding any provisions to the contrary, the daily medical benefit for Hospital confinement will not be less than $50 per day and not less than 31 days during any one covered confinement for each person insured under this Description of Coverage. These amounts apply regardless of any other coverage.

T001AD01.01ME (06/11)

### IMPORTANT NOTICE:

This plan does not apply to the extent any US, UN or EU economic or trade sanctions, or other laws or regulations, prohibit CSA Travel Protection from providing insurance, and related services, including, but not limited to, the payment of any claims. Any expenses incurred or claims made involving travel, or travel related services that are in violation of such sanctions, laws or regulations will not be covered under this plan. Any coverage provided under this plan in violation of any US, UN or EU economic or trade

sanctions, or other laws or regulations, shall be cancelled. To learn more please visit the US Treasury's website at www.treasury.gov/resource-center/sanctions.

T001NO01.01ME (05/18)

## FOR MICHIGAN RESIDENTS

### Form T001TC01.01DOC – CLAIMS PROVISIONS

1. CLAIMS PROVISIONS are revised as follows:

The Legal Actions provision is deleted in its entirety and replaced with the following:

Legal Actions

No legal action may be brought to recover on the policy within 60 days after written Proof of Loss has been given. No such action will be brought after six years from the time written Proof of Loss is required to be given.

2. The following is added to **Notice of Claim:**

Notice given to any Company representative or agent is considered notice to us.

T001AD01.01MI (06/11)

## FOR MISSOURI RESIDENTS

### Form T001TC01.01DOC – CLAIMS PROVISIONS

1. CLAIMS PROVISIONS are revised as follows:

The Legal Actions provision is deleted in its entirety and replaced with the following:

Legal Actions

No legal action may be brought to recover on the policy within 60 days after written Proof of Loss has been given. No such action will be brought after ten years from the time written Proof of Loss is required to be given.

The Notice of Claims paragraph is herewith amended to include the following:

Notice of Claims

However, no claim will be denied based upon the Insured's failure to provide notice within such specified time, unless this failure operates to prejudice the rights of the insurer, as per Missouri regulation 20CSR100-1.020.

T001AD01.01MO (08/11)

**FOR MISSISSIPPI RESIDENTS**

### Form T001TC01.01DOC – GENERAL EXCLUSIONS:

Exclusion 1.n. is deleted and replaced with the following:

n. Commission or the attempt to commit a felony or for which a contributing cause was the covered person's engagement in an illegal occupation.

### Form T001TC01.01DOC – CLAIMS PROVISIONS:

The following are added to CLAIMS PROVISIONS:

CLAIM FORMS

When we receive a notice of claim, forms for filing Proof of Loss will be sent to you.  If claim forms are not furnished within 15 days after the giving of such notice you shall be deemed to have complied with the requirements of the Policy as to Proof of Loss upon submitting within the time fixed in the Policy for filing Proofs of Loss, written proof covering the occurrence, the character and the extent of the Loss for which claim is made.

TIME PAYMENT OF CLAIMS

Indemnities payable under the Policy for any Loss will be paid immediately upon receipt of due written proof of such Loss. All claims shall be paid within 25 days following receipt by us of due Proof of Loss when acceptable Proof of Loss is filed electronically and 35 days for Proofs of Loss filed in a format other than electronic. If payment is not made within these timeframes, we will provide you with the reason(s) the claim is not payable or advise you of the additional information necessary to process the claim. Once such additional information is provided, the balance of the claim that is payable will be paid within 20 days of receipt of such additional information. Failure to pay within such time periods shall entitle you to interest at the rate of 1.5% per month from the date payment was due until final claims settlement or adjudication.

T001AD01.01MS (06/11)

**FOR NORTH CAROLINA RESIDENTS**

### Form T001TC01.01DOC - DEFINITIONS

The DEFINITIONS Section is revised as follows:

The following is added to the definition of **Hospital**.

**Hospital** also means:

   a. A place that is accredited as a **Hospital** by the Joint Commission on Accreditation of **Hospitals**, American Osteopathic Association, or the Joint Commission on Accreditation of Heath Care Organizations (JCAHO).

   b. A duly licensed State tax-supported institution, including those providing services for medical care

of cerebral palsy, other of orthopedic and crippling disabilities, mental and nervous diseases or disorders, mental retardation, alcoholism and drug or chemical dependency, and respiratory illness, on a basis no less favorable than the basis which would apply had the medical care been rendered in or by any other public or private institution or provider. The term "State tax-supported institutions" shall include community mental health centers and other health clinics which are certified as Medicaid providers.

### Form T001TC01.01DOC – GENERAL EXCLUSIONS

The GENERAL EXCLUSIONS Section is revised as follows:

Exclusion 1 l. is deleted in its entirety and replaced with the following:

l. war, whether declared or not declared.

The following is added to the Pre-Existing Conditions exclusion:

Such an Injury or Sickness will continue to be a Pre-Existing Condition until the earlier of:

(a) the expiration of 12 consecutive months, beginning with the effective date of coverage for which the Insured has not received any medical care, consultation, diagnosis, or treatment or has not taken any prescribed drug or medicine on account of such condition; or

(b) the expiration of 12 consecutive months, beginning with the effective date of coverage.

### Form T001TC01.01DOC – CLAIMS PROVISIONS

The CLAIMS PROVISIONS Section is revised as follows:

The following is added to Our Right to Recover and Subrogate from Others:

This provision does not apply to accident and sickness benefits.

The following Claims Provisions are added:

Claim Forms

Upon receipt of a notice of claim, we will furnish to you all forms for filing proofs of loss. If such forms are not furnished within 15 days after the giving of such notice you shall be deemed to have complied with the requirements as to proof of loss upon submitting, within the time fixed in the description of coverage for filing proofs of loss.

Time Payment of Claims

Amounts payable for any loss other than loss for which this Description of Coverage provides any period payment will be paid immediately upon receipt of due written proof of such loss.

**Form T001BR07.01NW - MEDICAL AND DENTAL COVERAGE**

The Excess Provisions in the Description of Coverage and, when attached, the Medical and Dental Coverage Form T001BR07.01NW are deleted and replaced by the following:

This insurance is in excess of all other valid and collectible insurance or indemnity other than private passenger auto no-fault benefits or third part liability insurance. If at the time of the occurrence there is other valid and collectible insurance or indemnity in place, we shall be liable only for the excess of the amount of loss, over the amount of such other insurance or indemnity, and applicable deductible

T001AD01.01NC (06/11)

**FOR NEBRASKA RESIDENTS**

### Form T001TC01.01DOC- GENERAL PROVISIONS

The following changes applies to **GENERAL PROVISIONS**

The following CONCEALMENT OF FRAUD provision is deleted in its entirety and replaced with the following:

CONCEALMENT OF FRAUD. We do not provide coverage if, at the time of a loss, you intentionally conceal or misrepresent any material fact or circumstance relating to this coverage and such concealment or fraud contributes to the loss or otherwise deceives the Company to its Injury.

T001AD01.01NE (08/11)

**FOR NEVADA RESIDENTS**

### Form T001TC01.01DOC - DEFINITIONS

The definition of Pre-Existing Condition is deleted in its entirety and replaced with the following:

PRE-EXISTING CONDITION

Pre-Existing Condition means a Sickness or Injury, regardless of the cause of the condition, for which medical advice, diagnosis, care or treatment was recommended or received by you or your traveling companion during the six month period immediately preceding the effective date of this coverage. Pre Existing Condition does not include genetic information in the absence of a diagnosis of the condition related to such information.

### Form T001TC01.01DOC – GENERAL EXCLUSIONS

Exclusion 1. c. is deleted in its entirety.

T001AD01.01NV (06/11)

**FOR OKLAHOMA RESIDENTS**

**WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.**

### Form T001DOC01NW, Policy Jacket

The Description of Coverage is amended by the following:

Insurance coverage is provided under the terms and conditions as stated in the Description of Coverage, not according to the terms and conditions of the Master Policy.

### Form T001TC01.01DOC - RIGHT TO EXAMINE YOUR DESCRIPTION OF COVERAGE

The **10 DAY RIGHT TO EXAMINE YOUR DESCRIPTION OF COVERAGE** Provision is amended by the addition of the following:

If we do not return any premiums or money paid within 30 days from the date of cancellation we will pay you interest on the amount due.

The following is deleted in its entirety:

"When so returned, the Policy is void from the beginning." And replaced by the following: "When so returned, the Policy is canceled from the beginning."

### Form T001TC01.01DOC - DEFINITIONS

The DEFINITIONS SECTION is amended as follows:

The term child, under the definition of FAMILY MEMBER includes an adopted child from the date the child is placed in your custody and or a child in your temporary care pursuant to an interlocutory decree issued under Title 10 of the Oklahoma statutes during the pendency of an adoption proceeding regardless of whether a final decree of adoption is ultimately issued. You must notify us within 31 days of obtaining custody if such custody is obtained after the effective date of this Policy.

### Form T001TC01.01DOC – GENERAL EXCLUSIONS

The GENERAL EXCLUSIONS SECTION is amended as follows:

Exclusion 1 l. declared or undeclared war or any act of war; is deleted in its entirety.

Exclusion 1 c. is deleted in its entirety and replaced with the following:

c. you or your Traveling Companion being under the influence of a narcotic, unless prescribed by a Physician.

Exclusions 1 e, g, i, m, o, p, r, s, and t do not apply to Accidental Death and Dismemberment- Air Flight Accident, Accidental Death and Dismemberment - Travel Accident, Medical and Dental Coverage.

### Form T001TC01.01DOC – GENERAL PROVISIONS

The following are added to the GENERAL PROVISIONS Section:

### CONFORMITY TO STATUTES

Any part of this Description of Coverage which conflicts with the State Laws of Oklahoma is changed to meet the minimum requirements of that law.

T001AD01.01OK (07/11)

**FOR SOUTH CAROLINA RESIDENTS**

### Form T001TC01.01DOC- GENERAL PROVISIONS

The following is added to **GENERAL PROVISIONS**

The following CONFORMITY WITH STATE STATUTES provision is added to GENERAL PROVISIONS:

CONFORMITY WITH STATE STATUTES. Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which the insured resides on that date is amended to conform to the minimum requirements of such laws.

### Form T001TC01.01DOC - CLAIMS PROVISIONS

The following changes applies to **CLAIMS PROVISIONS**

The provision titled Legal Actions is deleted in its entirety and replaced with the following:

Legal Actions

No legal action may be brought to recover on the plan within 60 days after written Proof of Loss has been given. No such action will be brought after six years from the time written Proof of Loss is required to be given. If a time limit of the plan is less than allowed by the laws of the state where you live, the limit is extended to meet the minimum time allowed by such law.

The following is added to Proof of Loss: After our receipt of a properly executed proof of loss, loss payment for undisputed claims will be made within 30 business days.

The following is added to Physical Examination and Autopsy: The autopsy must be performed in South Carolina.

T001AD01.01SC (08/11)

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may call the Program Administrators toll-free telephone number for information or to make a complaint at:

(800) 541-3522

You may also write to the Program Administrator:

CSA Travel Protection
P. O. Box 939057
San Diego, CA 92193-9057

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**

Should you have a dispute concerning your premium or about a claim you should contact Generali US Branch first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener información o para someter una queja:

Usted puede llamar al número de teléfono gratis de Generali Insurance Company para información o para someter una queja al:

(800) 541-3522

Usted también puede escribir al Administrador del Programa:

CSA Travel Protection
P. O. Box 939057
San Diego, CA 92193-9057

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas al:

Case 1:21-cv-02803-JGK Document 24 Filed 01/29/21 Page 49 of 68

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.state.tx.us

E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse primero con el Administrador del Programa. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para propósito de información y no se convierte en parte o condición del documento adjunto.

T001AD01.02TX (08/11)

## Form T001TC01.01DOC- CLAIMS PROVISIONS

The following changes applies to **CLAIMS PROVISIONS**

The Proof of Loss provision is deleted in its entirety and replaced with the following:

You have 91 days from the date of your loss to submit your claim to us, except as otherwise provided by law.

Within 15 business days after we receive notice of a claim we will:

- acknowledge receipt of the claim (If acknowledgement of the claim is not made, in writing, we will make a record of the date, means, and content of the acknowledgement.)
- commence any investigation of the claim; and
- request from you all items, statements, and forms that We reasonably believe, at that time, will be required from you. Additional requests may be made if during the investigation of the claim such additional requests are necessary.

We will notify you in writing of the acceptance or rejection of a claim no later than 15 business days after we receive all Proof of Loss required by us. If we reject the claim, we will tell you the reasons for the rejection. If we are unable to accept or reject the claim within 15 business days after we receive all Proof of Loss required, we will notify you within the 15 business-day period and tell you why we need additional time to investigate the claim. If we require additional time to investigate your claim, we will notify you if we accept or reject the claim no later than 45 business days after we request additional time to investigate the claim.

Except as otherwise provided, if we delay payment of a claim for more than 60 business days following receipt of all required Proof of Loss, we will pay the amount of the claim plus 18 percent interest per year along with reasonable attorney fees. If a lawsuit is filed, such attorney fees shall be taxed as part of the costs in the case.

The Legal Action provision is deleted in its entirety and replaced with the following:

No legal action may be brought to recover on the Policy within 90 days after written Proof of Loss has been given. No such action will be brought after three years from the time written Proof of Loss is required to be given. If a time limit of the Policy is less than allowed by the laws of the state where you live, the limit is extended to meet the minimum time allowed by such law.

## Form T001TC01.01DOC- ELIGIBILITY AND EFFECTIVE DATES

The **ELIGIBILITY AND EFFECTIVE DATES** Provision is amended as follows:

The following is added to When Coverage Ends:

4. Coverage will not end solely because a person becomes an elected official in Texas.

T001AD01.01TX (10/11)

## FOR VERMONT RESIDENTS

## Form T001TC01.01DOC – GENERAL PROVISIONS:

The following is added to the GENERAL PROVISIONS Section:

**CIVIL UNIONS:** This Description of Coverage provides benefits for parties to a civil union. Vermont law requires that insurance policies offered to married persons and their families be made available to parties to a civil union and their families. In order to receive benefits in accordance with this Description of Coverage, the civil union must be established in the state of Vermont according to Vermont law. It is understood that definitions and provisions designating:

- an Insured
- named Insured
- who is Insured
- who is a named Insured
- covered person(s)
- You and/or Your
- spouse

Domestic Partner

- Family Member

and any other definitions and provisions designating an Insured under this Description of Coverage, are amended, wherever appearing, where terms denoting a marital relationship or family relationship arising out of a marriage are used, to indicate parties to a civil union and their families under Vermont law.

## Form T001TC01.01DOC – CLAIMS PROVISIONS:

The following is added to the CLAIMS PROVISIONS:

Payment of Claims

After claim settlement has been agreed upon by you and us, we will mail payment in the agreed amount to you and/ or the Loss payee within 10 working days. Failure to pay within such period shall entitle you to interest at the rate of nine percent (9%) per annum at the expiration of each 4 weeks during the continuance of the period for which we are liable, provided that interest amounting to less than one dollar need not be paid. Any balance remaining unpaid upon the termination of liability will be paid immediately upon receipt of due written proof.

T001AD01.01VT (06/11)

## FOR WISCONSIN RESIDENTS

## Form T001TC01.01DOC – CLAIMS PROVISIONS:

The following changes apply to the CLAIMS PROVISIONS section:

The following is added to Proof of Loss: After our receipt of a properly executed proof of loss, loss payment will be made within 30 days.

The following sentence is added to the Our Right to Recover and Subrogate from Others provision:

Our ability to recover is limited to the amount remaining after you have been made whole, taking into account comparative negligence, for any such benefits paid to you.

T001AD01.01WI (06/11)

EXHIBIT D

**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

**ORDER OF THE HEALTH OFFICER
OF THE CITY AND COUNTY OF SAN FRANCISCO DIRECTING
ALL INDIVIDUALS LIVING IN THE COUNTY TO SHELTER AT THEIR
PLACE OF RESIDENCE EXCEPT THAT THEY MAY LEAVE TO
PROVIDE OR RECEIVE CERTAIN ESSENTIAL SERVICES OR
ENGAGE IN CERTAIN ESSENTIAL ACTIVITIES AND WORK FOR
ESSENTIAL BUSINESS AND GOVERNMENT SERVICES; EXEMPTING
INDIVIDUALS EXPERIENCING HOMELESSNESS FROM THE
SHELTER IN PLACE ORDER BUT URGING THEM TO FIND SHELTER
AND GOVERNMENT AGENCIES TO PROVIDE IT; DIRECTING ALL
BUSINESSES AND GOVERNMENTAL AGENCIES TO CEASE NON-
ESSENTIAL OPERATIONS AT PHYSICAL LOCATIONS IN THE
COUNTY; PROHIBITING ALL NON-ESSENTIAL GATHERINGS OF
ANY NUMBER OF INDIVIDUALS; AND ORDERING CESSATION OF
ALL NON-ESSENTIAL TRAVEL**

**(SHELTER IN PLACE)**
DATE OF ORDER:  March 16, 2020

**Please read this Order carefully.  Violation of or failure to comply with this Order is a misdemeanor punishable by fine, imprisonment, or both.  (California Health and Safety Code § 120295, *et seq.*; California Penal Code §§ 69, 148(a)(1); San Francisco Administrative Code section 7.17(b).)**

Summary: The virus that causes Coronavirus 2019 Disease ("COVID-19") is easily transmitted, especially in group settings, and it is essential that the spread of the virus be slowed to protect the ability of public and private health care providers to handle the influx of new patients and safeguard public health and safety.  Because of the risk of the rapid spread of the virus, and the need to protect all members of the community and the Bay Area region, especially including our members most vulnerable to the virus and also health care providers, this Order requires all individuals anywhere in San Francisco to shelter in place—that is, stay at home—except for certain essential activities and work to provide essential business and government services or perform essential public infrastructure construction, including housing.   This order begins at 12:01 a.m. on March 17, 2020 and will continue for three weeks through April 7, 2020, subject to the limited exceptions and under the terms and conditions more particularly set forth below.

Gatherings of individuals outside the home are generally prohibited, with certain exceptions for essential activities or essential travel or to perform work for essential businesses and government agencies or perform essential infrastructure work.  Consistent

1

**City and County of**           **Department of Public Health**
**San Francisco**                **Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

with the directive issued by Governor Gavin Newsom on March 15, 2020, all bars and nightclubs are ordered closed. Restaurants and cafes—regardless of their seating capacity—that serve food are ordered closed except solely for takeout and delivery service. Additionally, all gyms and recreation facilities are ordered closed. Homeless individuals are not subject to the shelter in place order but are strongly urged to find shelter and government agencies are urged to take steps needed to provide shelter for those individuals.

Under any of the limited circumstances in which individuals are allowed to interact in person outside their residence, the Health Officer orders individuals to abide by the following requirements: (i) maintain at least six feet from other individuals, wash hands with soap and water for at least 20 seconds as frequently as possible or using hand sanitizer, cover coughs or sneezes, and not shake hands; (ii) for people with medical conditions, regardless of age, that put them at higher risk of serious complications should they get COVID-19, and other than health care workers and other essential providers, avoid leaving their homes to the extent possible; and (iii) for employers in San Francisco that do not provide essential businesses or government services, take all steps necessary for employees to work remotely from home to the extent possible. These requirements build on the California Department of Public Health and United States Centers for Disease Control and Prevention guidelines issued March 11, 2020, extended as necessary to address the health emergency affecting the Bay Area region. No individual who is sick may go to the workplace or be outside the home except as necessary to seek or receive medical care in accordance with guidance from public health officials. The Health Officer may revise this Order as the situation evolves, and facilities must stay updated by checking the City Administrator's website (sfgsa.org) regularly.

This Order revokes and replaces Order Number C19-05b, issued March 13, 2020, and C19-02, issued March 7, 2020. Those orders are no longer in effect as of the effective date and time of this Order. This Order does not revoke Order Numbers C19-01b, C19-03, C19-04, or C19-06.

**UNDER THE AUTHORITY OF CALIFORNIA HEALTH AND SAFETY CODE SECTIONS 101040, 101085, AND 120175, THE HEALTH OFFICER OF THE CITY AND COUNTY OF SAN FRANCISCO ("HEALTH OFFICER") ORDERS:**

1. **The intent of this Order is to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the maximum extent possible. When people need to leave their places of residence, whether to obtain or perform vital services, or to otherwise facilitate authorized activities necessary for continuity of social and commercial life, they should at all times reasonably possible comply with Social Distancing Requirements as defined in Section 10 below. All provisions of this Order should be interpreted to effectuate this intent. Failure to**

**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

comply with any of the provisions of this Order constitutes an imminent threat and creates an immediate menace to public health.

2. All individuals currently living within the City and County of San Francisco (the "County") are ordered to shelter at their place of residence. To the extent individuals are using shared or outdoor spaces, they must at all times as reasonably possible maintain social distancing of at least six feet from any other person when they are outside their residence. All persons may leave their residences only for Essential Activities, Essential Governmental Functions, or to operate Essential Businesses, all as defined in Section 10. Individuals experiencing homelessness are exempt from this Section, but are strongly urged to obtain shelter, and governmental and other entities are strongly urged to make such shelter available as soon as possible and to the maximum extent practicable (and to use COVID-19 risk mitigation practices in their operation).

3. All businesses with a facility in the County, except Essential Businesses as defined below in Section 10, are required to cease all activities at facilities located within the County except Minimum Basic Operations, as defined in Section 10. For clarity, businesses may also continue operations consisting exclusively of employees or contractors performing activities at their own residences (i.e., working from home). All Essential Businesses are strongly encouraged to remain open. To the greatest extent feasible, Essential Businesses shall comply with Social Distancing Requirements as defined in Section 10 below, including by maintaining six-foot social distancing for both employees and members of the public, including, but not limited to, when any customers are standing in line.

4. All public and private gatherings of any number of people occurring outside a single household or living unit are prohibited, except for the limited purposes as expressly permitted in Section 10. Nothing in this Order prohibits the gathering of members of a household or living unit.

5. All travel, including, but not limited to, travel on foot, bicycle, scooter, motorcycle, automobile, or public transit, except Essential Travel and Essential Activities as defined below in Section 10, is prohibited. People must use public transit only for purposes of performing Essential Activities or to travel to and from work to operate Essential Businesses or maintain Essential Governmental Functions. People riding on public transit must comply with Social Distancing Requirements as defined in Section 10 below, to the greatest extent feasible. This Order allows travel into or out of the County to perform Essential Activities, operate Essential Businesses, or maintain Essential Governmental Functions.

6. This Order is issued based on evidence of increasing occurrence of COVID-19 within the County and throughout the Bay Area, scientific evidence and best practices regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, and evidence that the

3

**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

age, condition, and health of a significant portion of the population of the County places it at risk for serious health complications, including death, from COVID-19. Due to the outbreak of the COVID-19 virus in the general public, which is now a pandemic according to the World Health Organization, there is a public health emergency throughout the County. Making the problem worse, some individuals who contract the COVID-19 virus have no symptoms or have mild symptoms, which means they may not be aware they carry the virus. Because even people without symptoms can transmit the disease, and because evidence shows the disease is easily spread, gatherings can result in preventable transmission of the virus. The scientific evidence shows that at this stage of the emergency, it is essential to slow virus transmission as much as possible to protect the most vulnerable and to prevent the health care system from being overwhelmed. One proven way to slow the transmission is to limit interactions among people to the greatest extent practicable. By reducing the spread of the COVID-19 virus, this Order helps preserve critical and limited healthcare capacity in the County.

7. This Order also is issued in light of the existence of 37 cases of COVID-19 in the County, as well as at least 258 confirmed cases and at least three deaths in neighboring Bay Area counties, as of 10:00 a.m. on Sunday, March 16, 2020, including a significant and increasing number of suspected cases of community transmission and likely further significant increases in transmission. Widespread testing for COVID-19 is not yet available but is expected to increase in the coming days. This Order is necessary to slow the rate of spread and the Health Officer will re-evaluate it as further data becomes available.

8. This Order is issued in accordance with, and incorporates by reference, the March 4, 2020 Proclamation of a State of Emergency issued by Governor Gavin Newsom, the February 25, 2020 Proclamation by the Mayor Declaring the Existence of a Local Emergency issued by Mayor London Breed, as supplemented on March 11, 2020, the March 6, 2020 Declaration of Local Health Emergency Regarding Novel Coronavirus 2019 (COVID-19) issued by the Health Officer, and guidance issued by the California Department of Public Health, as each of them have been and may be supplemented.

9. This Order is also issued in accordance with, and incorporates by reference the March 12, 2020 Executive Order (Executive Order N-25-20) issued by Governor Gavin Newsom. Executive Order N-25- 20 expressly orders that "[a]ll residents are to heed any orders and guidance of state and local public health officials, including but not limited to the imposition of social distancing measures, to control the spread of COVID-19." This Order is also based on statements by Governor Newsom during a press conference on March 15, 2020, indicating the guidance of the State of California that all nightclubs, bars, wineries, and brewpubs close and that persons 65 years old and older isolate at home.

**City and County of
San Francisco**

**Department of Public Health
Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

10. <u>Definitions and Exemptions.</u>

    a.  **For purposes of this Order, individuals may leave their residence only to perform any of the following "Essential Activities." But people at high risk of severe illness from COVID-19 and people who are sick are urged to stay in their residence to the extent possible except as necessary to seek medical care.**

        i.  **To engage in activities or perform tasks essential to their health and safety, or to the health and safety of their family or household members (including, but not limited to, pets), such as, by way of example only and without limitation, obtaining medical supplies or medication, visiting a health care professional, or obtaining supplies they need to work from home.**

        ii.  **To obtain necessary services or supplies for themselves and their family or household members, or to deliver those services or supplies to others, such as, by way of example only and without limitation, canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products, and products necessary to maintain the safety, sanitation, and essential operation of residences.**

        iii.  **To engage in outdoor activity, provided the individuals comply with Social Distancing Requirements as defined in this Section, such as, by way of example and without limitation, walking, hiking, or running.**

        iv.  **To perform work providing essential products and services at an Essential Business or to otherwise carry out activities specifically permitted in this Order, including Minimum Basic Operations.**

        v.  **To care for a family member or pet in another household.**

    b.  **For purposes of this Order, individuals may leave their residence to work for or obtain services at any "Healthcare Operations" including hospitals, clinics, dentists, pharmacies, pharmaceutical and biotechnology companies, other healthcare facilities, healthcare suppliers, home healthcare services providers, mental health providers, or any related and/or ancillary healthcare services. "Healthcare Operations" also includes veterinary care and all healthcare services provided to animals. This exemption shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined. "Healthcare Operations" does not include fitness and exercise gyms and similar facilities.**



**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

c.  For purposes of this Order, individuals may leave their residence to provide any services or perform any work necessary to the operations and maintenance of "Essential Infrastructure," including, but not limited to, public works construction, construction of housing (in particular affordable housing or housing for individuals experiencing homelessness), airport operations, water, sewer, gas, electrical, oil refining, roads and highways, public transportation, solid waste collection and removal, internet, and telecommunications systems (including the provision of essential global, national, and local infrastructure for computing services, business infrastructure, communications, and web-based services), provided that they carry out those services or that work in compliance with Social Distancing Requirements as defined this Section, to the extent possible.

d.  For purposes of this Order, all first responders, emergency management personnel, emergency dispatchers, court personnel, and law enforcement personnel, and others working for or to support Essential Businesses are categorically exempt from this Order.  Further, nothing in this Order shall prohibit any individual from performing or accessing "Essential Governmental Functions."  Essential Government Functions means all services needed to ensure the continuing operation of the government agencies and provide for the health, safety and welfare of the public.  All Essential Governmental Functions shall be performed in compliance with Social Distancing Requirements as defined this Section, to the extent possible.

e.  For the purposes of this Order, covered businesses include any for-profit, non-profit, or educational entities, regardless of the nature of the service, the function they perform, or its corporate or entity structure.

f.  For the purposes of this Order, "Essential Businesses" means:

    i.  Healthcare Operations and Essential Infrastructure;

    ii.  Grocery stores, certified farmers' markets, farm and produce stands, supermarkets, food banks, convenience stores, and other establishments engaged in the retail sale of canned food, dry goods, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, and any other household consumer products (such as cleaning and personal care products).  This includes stores that sell groceries and also sell other non-grocery products, and products necessary to maintaining the safety, sanitation, and essential operation of residences;

    iii.  Food cultivation, including farming, livestock, and fishing;

6

**City and County of
San Francisco**

**Department of Public Health
Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

iv.  Businesses that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals;

v.  Newspapers, television, radio, and other media services;

vi.  Gas stations and auto-supply, auto-repair, and related facilities;

vii.  Banks and related financial institutions;

viii.  Hardware stores;

ix.  Plumbers, electricians, exterminators, and other service providers who provide services that are necessary to maintaining the safety, sanitation, and essential operation of residences, Essential Activities, and Essential Businesses;

x.  Businesses providing mailing and shipping services, including post office boxes;

xi.  Educational institutions—including public and private K-12 schools, colleges, and universities—for purposes of facilitating distance learning or performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible;

xii.  Laundromats, dry cleaners, and laundry service providers;

xiii.  Restaurants and other facilities that prepare and serve food, but only for delivery or carry out.  Schools and other entities that typically provide free food services to students or members of the public may continue to do so under this Order on the condition that the food is provided to students or members of the public on a pick-up and take-away basis only.  Schools and other entities that provide food services under this exemption shall not permit the food to be eaten at the site where it is provided, or at any other gathering site;

xiv.  Businesses that supply products needed for people to work from home;

xv.  Businesses that supply other essential businesses with the support or supplies necessary to operate;

**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

### ORDER OF THE HEALTH OFFICER No. C19-07

    xvi.   **Businesses that ship or deliver groceries, food, goods or services directly to residences;**

    xvii.   **Airlines, taxis, and other private transportation providers providing transportation services necessary for Essential Activities and other purposes expressly authorized in this Order;**

    xviii.   **Home-based care for seniors, adults, or children;**

    xix.   **Residential facilities and shelters for seniors, adults, and children;**

    xx.   **Professional services, such as legal or accounting services, when necessary to assist in compliance with legally mandated activities;**

    xxi.   **Childcare facilities providing services that enable employees exempted in this Order to work as permitted.  To the extent possible, childcare facilities must operate under the following mandatory conditions:**

        1.   **Childcare must be carried out in stable groups of 12 or fewer ("stable" means that the same 12 or fewer children are in the same group each day).**

        2.   **Children shall not change from one group to another.**

        3.   **If more than one group of children is cared for at one facility, each group shall be in a separate room. Groups shall not mix with each other.**

        4.   **Childcare providers shall remain solely with one group of children.**

**g.**  **For the purposes of this Order, "Minimum Basic Operations" include the following, provided that employees comply with Social Distancing Requirements as defined this Section, to the extent possible, while carrying out such operations:**

    i.   **The minimum necessary activities to maintain the value of the business's inventory, ensure security, process payroll and employee benefits, or for related functions.**

    ii.   **The minimum necessary activities to facilitate employees of the business being able to continue to work remotely from their residences.**

**City and County of
San Francisco**

**Department of Public Health
Order of the Health Officer**

## ORDER OF THE HEALTH OFFICER No. C19-07

    h.  For the purposes of this Order, "Essential Travel" includes travel for any of the following purposes.  Individuals engaged in any Essential Travel must comply with all Social Distancing Requirements as defined in this Section.

         i.  Any travel related to the provision of or access to Essential Activities, Essential Governmental Functions, Essential Businesses, or Minimum Basic Operations.

         ii.  Travel to care for elderly, minors, dependents, persons with disabilities, or other vulnerable persons.

         iii.  Travel to or from educational institutions for purposes of receiving materials for distance learning, for receiving meals, and any other related services.

         iv.  Travel to return to a place of residence from outside the jurisdiction.

         v.  Travel required by law enforcement or court order.

         vi.  Travel required for non-residents to return to their place of residence outside the County.  Individuals are strongly encouraged to verify that their transportation out of the County remains available and functional prior to commencing such travel.

    i.  For purposes of this order, residences include hotels, motels, shared rental units, and similar facilities.

    j.  For purposes of this order Social Distancing Requirements includes maintaining at least six-foot social distancing from other individuals, washing hands with soap and water for at least twenty seconds as frequently as possible or using hand sanitizer, covering coughs or sneezes (into the sleeve or elbow, not hands), regularly cleaning high-touch surfaces, and not shaking hands.

11.  Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and the Chief of Police in the County ensure compliance with and enforce this Order.  The violation of any provision of this Order constitutes an imminent threat and creates an immediate menace to public health.

12.  This Order shall become effective at 12:01 a.m. on March 17, 2020 and will continue to be in effect until 11:59 p.m. on April 7, 2020, or until it is extended, rescinded, superseded, or amended in writing by the Health Officer.

**City and County of**
**San Francisco**

**Department of Public Health**
**Order of the Health Officer**

**ORDER OF THE HEALTH OFFICER No. C19-07**

**13. The City must promptly provide copies of this Order as follows: (1) by posting on the City Administrator's website (sfgsa.org) and the Department of Public Health website (sfdph.org); (2) by posting at City Hall, located at 1 Dr. Carlton B. Goodlett Pl., San Francisco, CA 94102; and (3) by providing to any member of the public requesting a copy. In addition, the owner, manager, or operator of any facility that is likely to be impacted by this Order is strongly encouraged to post a copy of this Order onsite and to provide a copy to any member of the public asking for a copy.**

**14. If any provision of this Order or its application to any person or circumstance is held to be invalid, then the reminder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.**

**IT IS SO ORDERED:**

Tomás J. Aragón, MD, DrPH,                        Dated: March 16, 2020
Health Officer of the
City and County of San Francisco

EXHIBIT E

## EXECUTIVE DEPARTMENT
## STATE OF CALIFORNIA

### EXECUTIVE ORDER N-33-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

GAVIN NEWSOM
Governor of California

ATTEST:

ALEX PADILLA
Secretary of State

EXHIBIT F



Track claim status | Upload documents | Summary

 **IDENTIFICATION**

Policy number
20026W5835

**CLAIM**

Why are you submitting a claim?

> Trip Cancellation
>
> Cancellation of your trip prior to the departure

Trip Cancellation

**WHO** WAS UNABLE TO TRAVEL IN RELATION TO THE TRIP CANCELLATION?

TRAVELER 1
Martha Cooper
/1974
marthacooperdesign@gmail.com

TRAVELER 2
Dinah Cooper
/2008
marthacooperdesign@gmail.com

TRAVELER 3
Daniel Cooper
/1962
daniel@sycamore.law

WHAT HAPPENED TO YOU?

Date of loss
03/16/2020

Loss description:
Due to the COVID-19 worldwide pandemic, our flights were all cancelled. We were given Shelter-In-Place (lockdown) orders by the City of San Francisco. Social distancing orders around the world abnegates the purpose of the trip.

WHAT AMOUNT ARE YOU CLAIMING?

Amount total   $4,585.00

EXHIBIT G

From: <claims@info.csatravelprotection.com>
Date: Mon, Jun 15, 2020 at 9:29 AM
Subject: Claim #20054122-01 for Insured Cooper
To: <marthacooperdesign@gmail.com>, <daniel@sycamore.law>



PO Box 939057
San Diego, CA 92193
Tel: (800) 541-3522
Fax: (877) 300-8670
claims@csatravelprotection.com

Claims Correspondence

June 15, 2020

MS MARTHA COOPER
████████████
SAN FRANCISCO, CA  94103

Claim Number:                                          20054122-01
Policy Number:                                         20026W5835
Travel Dates:                                          June 15, 2020 - June 16, 2020

Dear Ms Martha Cooper:

CSA Travel Protection and Insurance Services represents Generali U.S. Branch as the administrator of the travel protection plan that was selected.

First, we sincerely hope that you and your loved ones are healthy and safe during this unprecedented time.

We have reviewed the information provided regarding your recent travel disruption. Unfortunately, the cause of loss is not due to an event that is covered by the plan you purchased.

Please refer to your Description of Coverage or Travel Insurance Policy for additional information.

Your policy only provides benefits for specific, listed events including Quarantine, and defines Quarantine as, " . . . the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."

Please also note stay-at-home orders are not considered Quarantine as these stay-at-home orders are not enforced isolation.

Additionally, the policy states "We will not pay for any loss under this Policy, caused by, or resulting from: . . . travel restrictions imposed for a certain area by governmental authority."

As the reason for your cancellation does not meet the requirements of a listed, Covered Event and is subject to exclusion, no benefits are payable for your claim.

However, due to the difficult circumstances, we wish to make an accommodation and provide you a voucher for the full amount of the insurance premium you paid to be applied to a future trip.

You do not need to call us, an email will be sent to the policyholder email address on file with all voucher information in the next few business days.

Additionally, our Global team is working around the clock in order to provide assistance and medical aid to customers. Please feel free to contact our customer service center at (800) 554-9839 if you have any travel related concerns.

Thank you for giving us an opportunity to help you during this difficult time.

Should you feel your claim has been improperly denied or rejected, we want you to know you may contact the California Department of Insurance with your complaint and seek assistance from the governmental agency that regulates insurance. To contact the Department, write or call: California Department of Insurance, Claim Services Bureau, 300 South Spring Street, South Tower, Los Angeles, CA 90013. The toll-free number is 1-800-927-HELP (4357)-within CA or 1-213-897-8921-outside CA.

If you have any questions, please feel free to contact us by email at claims@csatravelprotection.com or by FAX at (877) 300-8670. Please ensure the claim number is included with your response.

Sincerely,

Claims Department

Voucher/20054122-01

These plans are administered by CSA Travel Protection and Insurance Services. Services are provided through CSA's designated providers. Travel Insurance is Underwritten by: Generali U.S. Branch, New York, New York; NAIC # 11231 (all states except as otherwise noted) under Policy/Certificate Form series T001. California is Underwritten by Generali Assicurazioni Generali S.P.A. (U.S. Branch), Colorado is Underwritten by Assicurazioni Generali - U.S. Branch, Oregon is Underwritten by Generali U.S. Branch DBA The General Insurance Company of Trieste & Venice, and Virginia is Underwritten by The Generali Insurance Company of Trieste and Venice - U.S. Branch.